STATE of Iowa, Plaintiff–Appellee,

v.

Timothy Lewis CAYA, Defendant–Appellant.

No. 93–0347.

Court of Appeals of Iowa.

May 26, 1994.

Linda Del Gallo, State Appellate Defender, and Patricia J. Cone–Fisher, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., Mary E. Richards, County Atty., and Michael Houchins, Asst. County Atty., for appellee.

Heard by DONIELSON, C.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Defendant, Timothy Lewis Caya, appeals from his conviction, following a jury trial, of second-degree burglary, in violation of Iowa Code sections 713.1 and 713.5 (1991), and possession of burglar's tools, in violation of section 713.7 (Supp.1992). We affirm.

On October 18, 1992, after 8:00 p.m., Shawn Ovenden contacted police and reported seeing an unfamiliar male with long curly hair, wearing a leather jacket and blue jeans, near his fraternity house vending machine. The man left the building in a large "boat-like" older out-of-state car driven by someone else. Ovenden later contacted police to report that the car was again seen in the fraternity parking lot and relayed the car's license plate number.

At about 2:20 a.m. on October 19, 1992, police officers stopped a car matching the description given by Ovenden. After questioning the driver, Tessie Shoultz, about her reasons for being in the area, officers received permission to search the car. One officer noted that the passenger (later identified as the defendant) became agitated and was "fiddling with something" in his jacket pocket. The passenger was ordered out of the car. He ran away when the officer found a pocket scanner on his person. The police officers searched the area but were unable to find the passenger.

Shoultz was taken in for further questioning. She consented to a search of the trunk of her vehicle, which resulted in the seizure of, among other things, books that listed police radio frequencies, a plastic bag containing coins, a pair of bolt cutters, a pry bar, and pictures of the passenger who had fled.

At about 2:30 p.m., Michael Hurd, a member from a different fraternity, contacted police to report that he and Curtis Rice had confronted a man in front of the fraternity house soda machine that morning at about 2:00 a.m. Hurd described the man as about six feet tall, 150 to 160 pounds with brown curly hair, plastic framed brown glasses and wearing blue jeans, a white t-shirt and a jean

jacket. When Hurd confronted him, he was holding a L.A. Kings hat containing coins. Hurd asked him about the money, the man stated he found the coins on the floor, handed over the hat and left. Nothing was apparently taken from the fraternity house.

While Shoultz remained at the police station several telephone calls were received where the caller requested to speak with her. Eventually the police allowed the caller to speak with Shoultz. The police then allowed Shoultz to leave. They then followed her in hopes she and Caya would reunite.

Detective James Robinson and Officer Michael Ling occupied a gray unmarked Mazda car engaged in the surveillance. Officer Ling had been involved in the stop of Shoultz's automobile. While traveling on a northbound ramp onto Interstate 35 at approximately 12:15 p.m. Detective Robinson and Officer Ling saw a person who appeared to be hitchhiking and determined the person matched the description of defendant. After driving by the individual a second time, the gray Mazda pulled onto the side of the road and the individual ran towards the car. When Officer Ling, who was dressed in a uniform, opened his car door the person turned and ran into a nearby cornfield. He failed to stop when ordered to do so. Officer Ling later saw the person coming out of the cornfield and yelled for him to give up. The person drew a gun and fired a shot. The two officers gave chase but lost the person in an area near a trailer park. Following an extensive search by law enforcement, Caya was found hiding under a trailer in the trailer park at approximately 6:00 p.m.

After Caya was placed under arrest at the trailer park, Officer Burnett verified Caya was the same person who fled from the automobile stop earlier in the day. Hurd and Rice also identified Caya from a photographic array of six individuals as the person seen in their house.

Caya was charged with several offenses, including second-degree burglary and possession of burglar's tools.[1] He moved to suppress the photo identification made by Hurd and Rice, contending that of the six photos, only three depicted men of African descent and only the picture of himself showed a man with glasses wearing jeans and a jean jacket. The motion was overruled. Caya was convicted and now appeals.

## I. *Motion for Judgment of Acquittal.*

■ Caya contends the district court erred in overruling his motion for judgment of acquittal with respect to the charge of possession of burglar's tools because there was insufficient evidence to sustain a conviction of possession of burglar's tools beyond a reasonable doubt.[2] Caya argues the state failed to show he possessed the items seized with an intent to commit a burglary.

■ Denial of a motion for judgment of acquittal based on the alleged insufficiency of the evidence is reviewed on a "substantial evidence" standard. *State v. Schrier,* 300 N.W.2d 305, 306 (Iowa 1981). We view the evidence in the light most favorable to the state, including legitimate inferences and presumptions that fairly and reasonably may be deduced from the evidence in the record. *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984); *State v. Hall,* 371 N.W.2d 187, 188 (Iowa App.1985). Direct and circumstantial evidence are equally probative so long as the evidence raises "a fair inference of guilt and [does] more than create speculation, suspicion, or conjecture." *State v. Hamilton,* 309 N.W.2d 471, 479 (Iowa 1981). It is necessary to consider all the evidence in the record, and not just the evidence supporting the verdict, to determine whether there is substantial evidence to support the charge. *Bass,* 349 N.W.2d at 500; *Hall,* 371 N.W.2d at 188. Substantial evidence means evidence which would convince a rational fact finder that the defendant is guilty beyond a reasonable

1. The defendant was charged with attempted murder, burglary in the second degree, possession of burglar tools and interference with official acts. Following a jury trial, he was found not guilty of attempted murder and guilty of burglary in the second degree, possession of burglar's tools and interference with official acts.

He does not appeal the conviction and sentence of the interference with official acts conviction.

2. On appeal, Caya does not assign error to the district court's refusal to direct a verdict with respect to the burglary charge.

doubt. *State v. LeGear,* 346 N.W.2d 21, 23 (Iowa 1984); *Hall,* 371 N.W.2d at 188.

Iowa Code section 713.7 (1991) (as amended in 1992) provides:

> Any person who possesses any key, tool, instrument, device or any explosive, with the intent to use it in the perpetration of a burglary, commits an aggravated misdemeanor.

■ Burglar's tools are implements which, when assembled in combinations have such character as those commonly used to commit the crime of burglary. *Mahar v. Lainson,* 247 Iowa 297, 299–300, 72 N.W.2d 516, 518 (1955), *cert. denied,* 350 U.S. 972, 76 S.Ct. 445, 100 L.Ed. 843 (1956). It is immaterial each implement or combinations of them may also be used for an honest and legal purpose. *Id.* (citations omitted).

When Officer Burnett first questioned Caya, Caya had a pocket-sized radio frequency scanner under his coat. A pair of bolt cutters and a pry bar were found in the trunk of Ms. Shoultz's automobile along with various other tools. A search of the rest of the automobile revealed a scanner, antenna, two books of different frequencies and a tumbler of a round Ace type of lock. When Caya was apprehended three tubular keys were found in his possession, one of which was a "blank," which had not yet been cut. Tubular keys are used on Ace brand tubular locks, which are designed to be more resistant than regular locks. This type of lock is used primarily on vending machines and alarm systems.

Caya claims there is a legitimate explanation for all the items seized. He maintains he uses the bolt cutters and pry bar in his work as a self-employed auto mechanic and that he uses the scanner to assist in finding parties. We recognize that these tools have legitimate uses and, absent other evidence, would not be catagorized as burglar tools. However, because there is other evidence from which it may be inferred beyond reasonable doubt that defendant intended to use the tools in the commission of a crime, we believe a jury question on this issue has been generated. The credence and weight to be given to Caya's explanations was a question for the jury. *Id.* (citing *State v. Furlong,* 216

Iowa 428, 249 N.W. 132 (1933)); *State v. Salkil,* 441 N.W.2d 386, 388 (Iowa App.1989).

We determine sufficient evidence exists from which the jury could have found Caya guilty of possession of burglar's tools. We affirm on this issue.

## II. *Motion to Suppress Photo Lineup.*

■ Caya next claims the district court erred in overruling his motion to suppress evidence about the photo array shown to two witnesses, Mr. Hurd and Mr. Rice, as well as their in-court identification of Caya.

■ Our review is de novo, because the defendant is alleging error involving a constitutional right. To succeed on a claim that a photographic lineup violated due process, the defendant must establish (1) that the procedures were in fact impermissibly suggestive, and (2) the irregularities gave rise to a substantial likelihood of irreparable misidentification. *State v. Neal,* 353 N.W.2d 83, 86 (Iowa 1984).

Under the tests adopted by the United States Supreme Court in *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140, 154 (1977), "reliability is the linchpin" in determining the admissibility of identification testimony. According to the United States Supreme Court, the factors to be considered in assessing reliability

> include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Id.*

We reject Caya's claim that the lineup was impermissibly suggestive. We find that four of the six pictures were reasonably similar to Caya and provided a reasonably close array of subjects. *See State v. Thorton,* 506 N.W.2d 777, 779–80 (Iowa 1993). Caya's ethnic background is German and African–American. His skin tone closely matches

that of three other subjects, as does his medium-length curly brown hair.

We find that Caya was not deprived of due process by admission into evidence of the photographic and in-court identification of Caya by the State's witnesses.

## III. *Ineffective Assistance of Counsel.*

Caya claims his trial counsel was ineffective on various grounds including his failure: (1) to object to coins found in the trunk; (2) to call six additional witnesses; (3) to offer his auto mechanics school records; and (4) to pursue more vigorously evidence of hair specimens found on the L.A. Kings hat, and that there had been a "cover-up."

█ Where the record on direct appeal is not adequate to permit us to resolve the issue, we preserve the defendant's claim for postconviction proceedings so the facts may be so developed. *State v. Koenighain,* 356 N.W.2d 237, 238 (Iowa App.1984). This also gives the allegedly-ineffective attorney the opportunity to explain his or her conduct. *State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978). We conclude there is an inadequate record for us to adjudicate defendant's claim. We therefore preserve defendant's ineffective assistance of counsel claim for a later proceeding.

AFFIRMED.