**IN THE COURT OF APPEALS OF IOWA**

No. 17-1806
Filed November 21, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JON ARTHUR DIECKMANN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Marlita A. Greve,

Judge.

        Jon Dieckmann appeals his conviction and sentence for attempted burglary

in the second degree and possession of burglar's tools.  **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.

        Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

Jon Dieckmann appeals his conviction and sentence for attempted burglary in the second degree and possession of burglar's tools. He argues his counsel was ineffective on several grounds and the district court improperly assessed appellate attorney fees. We find his counsel was not ineffective for failing to challenge the sufficiency of the evidence, we preserve his other ineffective-assistance claims, and we find the court did not err in addressing appellate attorney fees. Therefore, we affirm.

## I.      Background Facts and Procedure

On May 15, 2017, Brenda Milam was alone at home with her dog. Her property has a paved walkway leading from the sidewalk to her front door and around the north side of her house. Her property also has a privacy fence that encloses the backyard and abuts the north and south sides of the house. Her fence has gates along the north and south sides that latch from the backyard side. She has "BEWARE OF THE DOG" signs on both gates and the front of her house. For the past four years, her front door has had a sign that says, "Doorbell broke. Please knock." She has a three-season room attached to the rear of her house, with an exterior door secured by an interior hook latch.

Milam, who was not feeling well, decided to rest on her living room couch and watch television. Shortly after 9:00 a.m., she heard a knock at her front door. Her dog barked at the door, but she decided to ignore it and remained on the couch. Her dog continued barking and growling as it made its way towards the rear of the house. She became alarmed and went to the three-season room, where she saw a man trying to open the exterior door. She could not see "if there was

something in his hand, but his hands were pushing on [the] door with the other hand towards the latch." She screamed at him, and he apologized and walked around the south side of the house to the front. He closed the south fence gate behind him, reaching over the gate to latch it shut, and rode away on a bicycle. Milam immediately called the police to report the incident. While talking to the police, she watched the man approach another house before riding out of view.

At or about 9:14 a.m., Sergeant Andrew Waggoner with the Davenport Police Department responded to Milam's call. Sergeant Waggoner quickly found Dieckmann in the location Milam indicated. Dieckmann "was literally an exact match of" the description Milam provided, including riding a bicycle, wearing no shirt, and carrying a large backpack. He stopped Dieckmann, and Dieckmann explained he was in the neighborhood looking for odd jobs such as lawn mowing and maintenance. He claimed he had just knocked on Milam's front door, noticed a sign telling him to go to the back door, and walked around to the back. When he knocked on the back door, a woman in the house screamed at him so he apologized and left. Officers found several items inside Dieckmann's backpack, including a long metal file, hammer, and work gloves. Sergeant Waggoner testified these items can be used for burglary.

On June 14, the State filed a trial information charging Dieckmann with burglary in the second degree and possession of burglar's tools. From August 21 to 23, a trial was held. Dieckmann presented testimony from two Davenport residents, who had hired him to perform odd jobs and were satisfied with his work, and testimony from his mother's boyfriend, who said Dieckmann had been working odd jobs and he had loaned Dieckmann the metal file and other tools inside the

backpack. The jury found Dieckmann guilty of attempted burglary in the second degree and possession of burglar's tools. Iowa Code §§ 713.6, .7 (2017). On October 12, the district court sentenced him to terms of incarceration not to exceed five years for attempted burglary and two years for possession of burglar's tools, run concurrently, plus suspended fines and other terms. The sentencing order contains the following provision:

> The Defendant is advised that if he determines to appeal this ruling, he may be entitled to court-appointed counsel to represent him in an appeal. The Defendant is advised that if he qualifies for court-appointed appellate counsel then he can be assessed the cost of the court-appointed appellate attorney when a claim for such fees is presented to the clerk of court following the appeal. The Defendant is further advised that he may request a hearing on his reasonable ability to pay court-appointed appellate attorney fees within 30 days of the issuance of the procedendo following the appeal. If the Defendant does not file a request for a hearing on the issue of his reasonable ability to pay court-appointed appellate attorney fees, the fees approved by the State Public Defender will be assessed in full to the Defendant.

Dieckmann now appeals.

## II.	Standard of Review

"We review claims of ineffective assistance of counsel de novo." *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). We review claims of an illegal sentence for correction of legal errors at law. *State v. Lyle*, 854 N.W.2d 378, 382 (Iowa 2014).

## III.	Ineffective Assistance of Counsel

Dieckmann argues his counsel was ineffective for failing to (1) challenge the sufficiency of the evidence; (2) object to the marshalling instruction for attempted burglary in the second degree; (3) object to improper and inadmissible evidence; and (4) move for mistrial after the jury heard improper evidence. He also

argues the cumulative effect of these errors resulted in prejudice. *See Clay*, 824 N.W.2d at 501–02 (discussing cumulative errors in ineffective-assistance claims).

"In order to succeed on a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The defendant must prove both prongs by a preponderance of the evidence. *Id.* at 196.

### A. Sufficiency of the Evidence

"In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (citations omitted). "[W]e will uphold a verdict if substantial record evidence supports it." *Id.* (quoting *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006)). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.*

Dieckmann was convicted of attempted burglary in the second degree and possession of burglar's tools. Even if we assume Dieckmann's counsel failed to perform an essential duty by challenging the sufficiency of the evidence, he must show this failure resulted in prejudice. *See Maxwell*, 743 N.W.2d at 195.

Iowa Code section 713.2 provides the following definition of attempted burglary:

Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license, or privilege to do so, attempts to enter an occupied structure, the occupied structure not being open to the public, or who attempts to remain therein after it is closed to the public or after the person's right, license, or privilege to be there has expired, or any person having such intent who attempts to break an occupied structure, commits attempted burglary.

"A person commits attempted burglary in the second degree" if, "[w]hile perpetrating an attempted burglary in or upon an occupied structure in which one or more persons are present, the person does not have possession of an explosive or incendiary device or material, nor a dangerous weapon, and no bodily injury is caused to any person." Iowa Code § 713.6(1)(b).

Dieckmann only challenges the sufficiency of the evidence as it relates to his "intent to commit a felony, assault or theft" inside Milam's home. *See id.* § 713.2. According to Milam's testimony, Dieckmann knocked on her front door and entered her backyard when no one answered. In doing so, he walked through the grass on the south side of her home, ignored the paved walkway along the north side, and walked through a gate in her privacy fence. She then saw him attempt to open the latched door of her attached three-season room, and he left when she screamed at him. Sergeant Waggoner encountered Dieckmann a few minutes later. Dieckmann confirmed he had recently walked around to the back door of a house, but Sergeant Waggoner testified Dieckmann claimed a sign at the house told visitors to go around back. Milam testified she has no such sign on her property and no visitor had ever walked around the south side of her property to her back door. Dieckmann also claimed he was soliciting odd jobs in the area, but he wore no shirt while supposedly approaching potential customers and had few tools for yardwork with him. Milam's testimony, as supported by Sergeant

Waggoner's testimony and the contents of the backpack, provides substantial evidence to support a finding that Dieckmann had "the intent to commit a felony, assault or theft" inside Milam's home. *See id.*

However, Dieckmann points to evidence he claims is exculpatory. Milam acknowledged the sign on her home telling people to knock had been in place for years, and Dieckmann speculates the sign may be difficult to read now. Milam's barking dog was likely audible outside the home when he knocked. He calmly left and locked the gate after she screamed at him. He did not try to evade Sergeant Waggoner when approached. He had several work tools with him when stopped. Multiple witnesses testified they had recently paid Dieckmann to perform odd jobs for them. He was able to present these arguments to the jury, and the jury was entitled to accept the above evidence as sufficient. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) *(*"The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive."). Even considering his arguments, substantial evidence supports finding Dieckmann committed attempted burglary in the second degree.

Regarding the possession of burglar's tools, the crime occurs when a person "possesses any key, tool, instrument, device or any explosive, with the intent to use it in the perpetration of a burglary." Iowa Code § 713.7. As explained above, substantial evidence supports finding Dieckmann had the intent to commit burglary. Dieckmann had several tools with him at the time, and Sergeant Waggoner testified his tools could be used to commit burglary. Dieckmann notes Milam testified she did not see the tools with him in her backyard and his witnesses testified he used the tools in his handyman business. However, when considering

all of the evidence, substantial evidence supports finding he possessed burglar's tools. *See State v. Caya*, 519 N.W.2d 419, 422 (Iowa Ct. App. 1994) ("We recognize that these tools have legitimate uses and, absent other evidence, would not be [categorized] as burglar tools. However, because there is other evidence from which it may be inferred beyond reasonable doubt that defendant intended to use the tools in the commission of a crime, we believe a jury question on this issue has been generated. The credence and weight to be given to [the defendant's] explanations was a question for the jury.").

Because the evidence is sufficient to support Dieckmann's convictions for attempted burglary in the second degree and possession of burglar's tools, no prejudice resulted when his counsel did not challenge the sufficiency of the evidence and his counsel was not ineffective for failing to do so.

## B. Other Grounds for Ineffective Assistance

Dieckmann also argues his counsel was ineffective for failing to object to the marshalling instruction for attempted burglary in the second degree, object to improper and inadmissible evidence, and move for mistrial after the jury heard improper evidence. On the record before us, we are unable to determine if his counsel breached an essential duty on any of these grounds. *See State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006) ("Because '[i]mprovident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel,' postconviction proceedings are often necessary to discern the difference between improvident trial strategy and ineffective assistance." (citation omitted)); *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978) ("Even a lawyer is entitled to his [or her] day in court . . . ."). Therefore, we preserve

these grounds—and his cumulative-error claim—for potential postconviction proceedings.

### IV. Appellate Attorney Fees

Dieckmann argues the district court erred when it ordered him to pay appellate attorney fees unless he requested a hearing on the issue of his reasonable ability to pay. Regardless of whether a defendant requests a hearing, "[a] cost judgment may not be constitutionally imposed on a defendant unless a determination is first made that the defendant is or will be reasonably able to pay the judgment." *State v. Dudley*, 766 N.W.2d 606, 615 (Iowa 2009). However, the provision in the sentencing order regarding appellate attorney fees is not an order to pay fees; rather, it merely summarizes the law and puts Dieckmann on notice that he may be required to pay appellate attorney fees for any possible appeal. If "the district court assesses any future attorney fees on [Dieckmann's] case, it must follow the law and determine the defendant's reasonable ability to pay the attorney fees without requiring him to affirmatively request a hearing on his ability to pay." *State v. Coleman*, 907 N.W.2d 124, 149 (Iowa 2018). Therefore, the court did not error in this provision of the sentencing order.

### V. Conclusion

Dieckmann's counsel was not ineffective for failing to claim the evidence is insufficient to support his convictions for attempted burglary in the second degree and possession of burglar's tools. We preserve his other ineffective-assistance claims for potential postconviction review. Additionally, the court did not err in discussing appellate attorney fees in the sentencing order.

**AFFIRMED.**