**STATE of Iowa, Appellee,**

v.

**Christopher LeGEAR, Appellant.**

**No. 68801.**

Supreme Court of Iowa.

March 14, 1984.

Charles L. Harrington, Appellate Defender, and Francis C. Hoyt, Jr., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Steven M. Foritano, Asst. Atty. Gen., and David E. Richter, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, McGIVERIN, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

Defendant Christopher LeGear appeals his conviction of murder in the first degree, a violation of Iowa Code section 707.2. He raises issues concerning jurisdiction and sufficiency of the evidence, objects to the admission of allegedly prejudicial evidence, and claims ineffective assistance of trial counsel. We affirm defendant's conviction.

On the night of June 26, 1981, defendant invited his friend, Rex Larrison, to meet him in an Omaha, Nebraska, bar and then to drive him across the river to Crescent, Iowa, where defendant intended to collect a debt. While at the bar, defendant and Larrison ran into the victim, Donna Kresl, defendant's sometime girl friend. There is no suggestion this meeting was planned. After a few drinks, the three left the bar, visited one of defendant's friends, and proceeded to Crescent where they found the debtor was not at home. Defendant continued to drink throughout the evening. There is also some evidence that he ingested various drugs. Relations between defendant and Kresl were amicable, but during the return to Nebraska, the two began discussing a motorcycle accident in which they had been involved and for which Kresl had sought compensation from defendant. Defendant became angry and repeatedly asked Larrison to stop the car. He did not give Larrison any reason for these requests, but later testified his purpose was to remove Kresl from the vehicle.

Larrison finally stopped the car in the westbound lane of the Iowa-Nebraska Mormon Bridge, at a point later identified as being on the Iowa side of the Missouri River. Defendant then pulled Kresl from the car and held her over the bridge railing. At that point the bridge was some sixty-five feet above the river. According to Larrison, defendant then threw Kresl into the river. According to defendant, Kresl fell out of his arms and into the river below. When defendant returned to the car, he told Larrison the victim "was swimming." Larrison testified defendant also commented "she deserved it." The two men then decided to dispose of Kresl's purse and personal effects. Neither apparently made any attempt to ascertain whether she had survived or to seek help in case she had. Instead they later met and fabricated a cover story that defendant subsequently related to the police.

The victim's body was retrieved from the Iowa side of the Missouri River a few days later; her death, according to medical testimony, was caused by drowning. When Larrison learned Kresl was dead, he contacted the Omaha police department. He later served as the State's star witness in this case.

I. Much evidence was introduced at trial concerning the exact location of Larrison's car when defendant pulled Kresl from it. Defendant argues the State's evidence of the location lacked foundation and was insufficient to place the crime in Iowa. Iowa Code section 1.3, however, makes defendant's efforts irrelevant by providing for "concurrent jurisdiction on the waters of any river or lake which forms a common boundary between this and any other state." This section was enacted pursuant to section 3 of 5 Stat. 742, the 1845 federal legislation admitting Iowa to the Union. It has been part of our statutory law since 1851. *See State v. Rorris*, 222 Iowa 1348, 1351, 271 N.W. 514, 516 (1937) ("And so

Iowa has laid down the rule, accepted by the great weight of authority, that the jurisdiction of this State extends not alone to the boundary line of the State but that it 'has concurrent jurisdiction on the water of any river or lake which forms a common boundary ....' "). The necessity rationale foundationing the statute is sound:

Injuries are inflicted upon persons and property, by persons *while on the river*, for which they should be held answerable, criminally as well as civilly. If jurisdiction in all such cases were made to depend on the inquiry whether the boat or vessel was on one side or the other of the main channel; whether the injury was inflicted or crime committed east or west, or north or south of such line, it can be readily seen that it would be frequently almost impossible to determine such jurisdiction, and that a mistake in this respect would prove fatal to the action or prosecution. And hence the reason of making the jurisdiction concurrent in all such cases.

*Gilbert v. Moline Water Power and Manufacturing Co.*, 19 Iowa 319, 321–22 (1866).

This rationale is equally applicable when the crime is committed on a boundary-spanning bridge:

One of the reasons for establishing this concurrent jurisdiction was to prevent the escape of criminals on account of the uncertainty that so frequently arises as to whether the act was committed on one side of the middle of the main channel or the other side of it. This uncertainty exists just as well when the act is committed on a bridge ....

*State v. George*, 60 Minn. 503, 506, 63 N.W. 100, 101 (1895).

■ Because "[c]ourts should at least know what everyone else knows," *Stenberg v. Buckley*, 245 Iowa 622, 627, 61 N.W.2d 452, 455 (1954), we take judicial notice that the Missouri is a boundary river. We therefore hold that pursuant to Code section 1.3, Iowa had jurisdiction to

try defendant, no matter what part of the Missouri River he used to commit this crime.[1] Our holding renders it unnecessary to consider defendant's other jurisdictional claims.

■ II. Defendant also argues the evidence presented to the jury was insufficient to sustain a conviction of first-degree murder. We use the familiar "substantial evidence" standard in evaluating this claim.

[A] jury verdict ... is binding upon this court unless there is no substantial evidence in the record to support it or such finding is clearly against the weight of the evidence. Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt.

*State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981) (citations omitted). We view the evidence "in the light most favorable to the State" and draw from it "all fair and reasonable inferences ... taking all the evidence into consideration, both direct and circumstantial," *State v. Duncan*, 312 N.W.2d 519, 522 (Iowa 1981) (citations omitted).

■ To sustain defendant's first-degree murder conviction, the State was required to prove he killed Kresl with malice aforethought and in a willful, deliberate and premeditated manner. Iowa Code §§ 707.-1, 707.2(1) (1983). Defendant contends there is no evidence of deliberation and premeditation. He argues the meeting with Kresl was unplanned and that mere fortuity caused Larrison to stop his car on the Mormon Bridge. Defendant asserts here that there was an earlier incident in which Kresl was forced to find her own transportation home after an evening with defendant, and he argues his intention was to leave her stranded again. Defendant then claims that when he pulled Kresl from Larrison's car his only purpose was to scare her by holding her over the bridge rail. He asserts he had no intention to kill

---

1. Prosecution of the crime in Iowa also is aided by Code section 803.1(2), which provides that death is presumed to have occurred within the state if the body of a murder victim is found therein. Uncontradicted evidence placed Kresl's body on the Iowa side of the river.

her, but was powerless to prevent her fall. Defendant's lack of murderous intent was testified to by a psychologist and a psychiatrist, both of whom opined defendant did not premeditate murder, although he did intend to put his victim in the river. The psychiatrist further explained that defendant "impulsively dropped" Kresl into the water. In expressing these opinions both experts noted the prior alleged incident in which defendant and Kresl quarreled and defendant purportedly abandoned her on the road.

In rebuttal, the State's expert testified defendant was capable of premeditation and intended to cause Kresl's death. Additionally, defendant's testimony distinguished the prior episode in which he allegedly deserted Kresl. Defendant testified he suggested Kresl catch a ride with a passing police cruiser on that occasion only because his motorcycle had run out of gas. There was no animosity between them, and defendant visited Kresl later in the evening to assure himself of her safety.

Although the evidence is conflicting on the question of defendant's intoxication, see State v. Winfun, 261 N.W.2d 484, 486 (Iowa 1978) ("[I]t is for the trier of fact to decide what part defendant's condition played in the crime."), defendant unquestionably was angry when he held Kresl over the rail. While the two struggled, both in the car and on the bridge, defendant could have decided to remove the victim from his life permanently, using the simple expedient of dropping her sixty-five feet off the Mormon Bridge.

> To deliberate is to weigh in one's mind or to consider. To premeditate is to think or ponder upon a matter before action. ... [P]remeditation and deliberation need not exist for any particular length of time.

State v. Fryer, 226 N.W.2d 36, 41 (Iowa 1975). Because there was substantial evidence enabling the jury to find premeditation, we will not second-guess their verdict. See State v. Sims, 239 N.W.2d 550, 554 (Iowa 1976).

■ III. Defendant's third ground for appeal concerns his trial counsel's objection to a question asked of prosecution witness Michael Kresl, ex-husband of the victim:

Q. Now, was there any child born of that marriage between you and Donna Kresl? A. Yes, there was.

DEFENSE COUNSEL: Objected to as being immaterial and irrelevant.

THE COURT: Overruled.

Defendant contends this testimony was so unfairly prejudicial that its introduction warrants a reversal of his conviction.

This question was merely part of the foundation to show the reason for the ex-husband's discovery of the victim's absence from her home during the week of June 26–28, when he tried to return their son to her custody. We believe the evidence was material and relevant. In addition, we do not grant defendant relief on this ground because no error has been preserved for our review.

In State v. Taylor, 310 N.W.2d 174, 177 (Iowa 1981), this court reiterated its rule regarding the timing of objections:

> [I]f an objection is made after the answer to a question is in the record, it is inadequate unless a motion to strike is made, an application to place the objection before the answer is made, or an excuse is offered for the delay in objecting to the evidence.

This is not a new concept in Iowa trial practice. See State v. Reese, 259 N.W.2d 771, 775 (Iowa 1977); State v. Johnson, 243 N.W.2d 598, 605 (Iowa 1976); State v. Taylor, 201 N.W.2d 724, 727 (Iowa 1972).

The Taylor case also stresses this court's policy of requiring specific objections to tainted evidence:

> It is incumbent upon the objecting party to lodge specific objections, so the trial court is not left to speculate whether the evidence is in fact subject to some infirmity that the objection does not identify. Every ground of exception that is not particularly specified is considered abandoned. A party cannot announce one reason for an objection at trial and on

appeal rely on a different one to challenge an adverse ruling.

310 N.W.2d at 177 (citations omitted). We also have held, more specifically, that "an objection in the trial court on the ground of relevancy is insufficient to preserve error on the ground of unfair prejudice," *State v. Sharpe*, 304 N.W.2d 220, 225 (Iowa), *cert. denied*, 454 U.S. 834, 102 S.Ct. 134, 70 L.Ed.2d 113 (1981); *see also State v. Mark*, 286 N.W.2d 396, 410 (Iowa 1979). Both on the merits and on the basis of defendant's objection to this testimony, we decline to reverse his conviction on this ground.

■ IV. Finally, defendant alleges ineffective assistance of counsel. He claims trial counsel should have sought a continuance because defendant's incarceration left him mentally unable to assist with his defense. He argues that additional defense witnesses should have been called, and he objects both to counsel's cross-examination of Larrison and to counsel's presentation of the jurisdictional evidence. Our discussion in division I moots our need to consider the jurisdictional claim.

Defendant testified extensively and coherently at his trial. He was subjected to intense cross-examination during which he maintained his story that he intended only to scare the victim. Before trial he furnished his lawyer with the names of several people to call as witnesses. He succeeded in convincing two out of three mental health professionals that he had no intent to murder his victim. His ability to assist in his own defense was manifested both by his pretrial conduct and by his in-court testimony. His motion for a protective order did not reveal any specific ill effects from his incarceration. On this record, we hold counsel was not ineffective in failing to seek a continuance of defendant's trial.

Defendant's remaining allegations, concerning counsel's cross-examination of Larrison and counsel's failure to call additional defense witnesses, cannot be decided on the record before us and may therefore be advanced in postconviction proceedings. *See State v. Steltzer*, 288 N.W.2d 557, 560 (Iowa 1980).

Because we are unable to find merit in any of defendant's claims, we affirm his conviction of first-degree murder.

AFFIRMED.