# IN THE COURT OF APPEALS OF IOWA

No. 19-0465
Filed September 2, 2020

**CHRISTOPHER LEGEAR,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Pottawattamie County, Kathleen A.

Kilnoski, Judge.

Petitioner appeals the summary dismissal of his third postconviction-relief

application. **AFFIRMED.**

Christopher J. Roth of Roth Weinstein, LLC, Omaha, Nebraska, for

appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee State.

Considered by Bower, C.J., Greer, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2020).

**BLANE, Senior Judge.**

Christopher LeGear was convicted of first-degree murder in 1982. In 2016, he filed his third application for postconviction relief (PCR). He claimed he has been diagnosed as suffering "dissociative amnesia" during the events giving rise to his conviction and that his trial counsel's failure to request a psychiatric re-evaluation prior to his criminal trial qualifies as a new ground in fact that could not have been raised within the applicable time period, making his application exempt from the three-year limitation in Iowa Code section 822.3 (2016).[1] LeGear next claimed that our court's opinion in *Gillam v. State* provides a new ground of law entitling him to raise the new psychiatric diagnosis as an exception to the three-year statute of limitation. No. 13-0359, 2014 WL 468022 (Iowa Ct. App. Feb. 5, 2014). LeGear further claimed his criminal trial attorney's lack of licensure in Iowa, which he claimed only to have recently learned upon examining the court file, also entitled him to belatedly raise this issue and warranted a new trial.

The State moved for summary dismissal under Iowa Code section 822.6(3), arguing that LeGear's application was beyond the three-year limitation in Iowa Code section 822.3 and the exception did not apply. After a hearing and a thorough review, the district court found that the matters LeGear raised did not amount to a new ground in fact or law that could not have been raised within the applicable time period, granted the State's motion, and dismissed LeGear's third

---

[1] In 2003, LeGear's expert witness, Dr. Kimberly C. Hall, had evaluated him and diagnosed "traumatic amnesia," which formed the basis for his second PCR application. In 2018, Dr. Hall re-classified her diagnosis as "dissociative amnesia" to conform with the designation in DSM-V.

PCR application. LeGear appealed on March 21, 2019.[2] Upon our review, we agree with the well-reasoned decision of the district court and affirm.

I. **Standard of review.**

Our review of the district court's ruling on the State's statute-of-limitations defense is for correction of errors of law. *Thongvanh v. State*, 938 N.W.2d 2, 8 (Iowa 2020). When reviewing the lower court's statute-of-limitations ruling for correction of errors of law in postconviction relief proceedings, the appellate court will affirm if the trial court's findings of fact are supported by substantial evidence and the law was correctly applied. *Harrington v. State*, 659 N.W.2d 509, 519 (Iowa 2003).

> We examine the language of section 822.3 in light of its purpose and objectives. It is clear the legislative intent of section 822.3 was to conserve judicial resources, promote substantive goals of criminal law, foster rehabilitation, and restore a sense of repose in our

---

[2] In this appeal, LeGear is represented by counsel. On November 8, 2019, our supreme court entered the following order:

> On July 11, 2019, this court struck the appellant's pro se supplemental brief as prematurely filed. The court noted that, effective July 1, 2019, an applicant seeking postconviction relief who is currently represented by counsel shall not file any pro se document in any Iowa Court, and the court shall not consider such pro se filings. *See* Iowa Code § 822.3B(1). In the event the appellant filed a timely pro se supplemental brief, he was directed to address whether the new legislation prohibits the appellate court from considering his pro se filings. The appellant addressed the new legislation in his motion. The State indicates it will address this issue in its brief.
>
> Upon consideration, the court determines the motion for leave to file a pro se supplemental brief shall be submitted with the appeal.

Both LeGear and the State have addressed this issue in their briefs. Our court has consistently held that Iowa Code section 822.3B(1), which became effective on July 1, 2019, and prohibits filings by pro se appellants who are represented by counsel, does not apply to appeals filed before that date. *See Harlston v. State*, No. 19-0627, 2020 WL 4200859, at *2 (Iowa Ct. App. July 22, 2020). Since LeGear filed his appeal before the effective date of the statute, we grant the motion for leave and consider appellant's pro se brief filed on October 10, 2019, and appellant's pro se supplemental reply brief filed on January 21, 2020.

criminal judicial system. We also recognize that statutes of limitations are built on practical and pragmatic foundations.

*Cornell v. State*, 529 N.W.2d 606, 610–11 (Iowa Ct. App. 1994) (citations omitted).

## II. **Background facts and procedure.**

On June 26, 1981, LeGear tossed his sometime girlfriend, Donna Rae Kresl, from the sixty-five-foot-high Mormon Bridge into the Missouri River, and she drowned. Following trial, a jury convicted LeGear of first-degree murder. He appealed, and our supreme court affirmed his direct appeal in 1984. *See State v. LeGear*, 346 N.W.2d 21 (Iowa 1984).[3] In the opinion, the court summarized the facts:

> According to [eyewitness] Larrison, defendant then threw Kresl into the river. According to defendant, Kresl fell out of his arms and into the river below. When defendant returned to the car, he told Larrison the victim "was swimming." Larrison testified defendant also commented "she deserved it." The two men then decided to dispose of Kresl's purse and personal effects. Neither apparently made any attempt to ascertain whether she had survived or to seek help in case she had. Instead they later met and fabricated a cover story that defendant subsequently related to the police.

*Id.* at 22. The supreme court also discussed the defense trial tactics of the case.

> Defendant then claims that when he pulled Kresl from Larrison's car his only purpose was to scare her by holding her over the bridge rail. He asserts he had no intention to kill her, but was powerless to prevent her fall. Defendant's lack of murderous intent was testified to by a psychologist and a psychiatrist, both of whom opined defendant did not premeditate murder, although he did intend to put his victim in the river. The psychiatrist further explained that defendant "impulsively dropped" Kresl into the water. . . .
>     In rebuttal, the State's expert testified defendant was capable of premeditation and intended to cause Kresl's death.

*Id.* at 23–24. LeGear also raised ineffective-assistance-of-counsel claims.

---

[3] Procedendo issued on April 12, 1984.

Finally, defendant alleges ineffective assistance of counsel. He claims trial counsel should have sought a continuance because defendant's incarceration left him mentally unable to assist with his defense. . . .

Defendant testified extensively and coherently at his trial. He was subjected to intense cross-examination during which he maintained his story that he intended only to scare the victim. Before trial he furnished his lawyer with the names of several people to call as witnesses. He succeeded in convincing two out of three mental health professionals that he had no intent to murder his victim. His ability to assist in his own defense was manifested both by his pretrial conduct and by his in-court testimony. His motion for a protective order did not reveal any specific ill effects from his incarceration. On this record, we hold counsel was not ineffective in failing to seek a continuance of defendant's trial.

*Id.* at 25.

After losing his direct appeal, LeGear filed his first application for PCR, which was denied, and our court affirmed in 1990. *See LeGear v. State*, No. 88-406, 1990 WL 171693 (Iowa Ct. App. May 24, 1990). LeGear then filed a habeas corpus petition in federal court, which was denied, and the Eight Circuit Court of Appeals affirmed it in 1993. *See LeGear v. Nix*, No. 93-1283, 1993 WL 411474 (8th Cir. Oct. 15, 1993). Thereafter, LeGear filed his second application for PCR in 1996, and in 2005 our court affirmed denial of that application as untimely. *See LeGear v. State*, No. 04-1125, 2005 WL 1963038 (Iowa Ct. App. Aug. 17, 2005).[4]

Finally, LeGear filed the present application—his third—on May 12, 2016. His application raised three issues. First, LeGear argued that Dr. Hall's 2018 diagnosis of "dissociative amnesia" is a new ground of fact entitling him to a new

[4] The district court initially dismissed the second application without a hearing. LeGear appealed, and this court reversed the dismissal and remanded for further proceedings. *LeGear*, 2005 WL 1963038, at *1. On remand, after a hearing, the district court again granted the State's motion for summary dismissal, finding the application was filed beyond the three year limitation in Iowa Code section 822.3 (2003). *Id.*

trial and also allows him to raise this issue beyond the three-year limitation in Iowa Code section 822.3 (2016). Second, that our opinion in *Gillam*, 2014 WL 468022, at *1, established a new ground of law allowing him to raise the psychiatric issue (amnesia). And third, that his criminal defense attorney was not licensed in the state of Iowa, he did not receive the requisite legal representation, and this requires reversal of his conviction. He also contends that he did not have access to court documents until recently, which disclosed this licensure problem, again allowing him to raise this claim beyond the three-year limitation period.

The State filed a motion to dismiss. The district court granted LeGear's request for expert fees to again retain the services of Dr. Hall, the psychiatrist whom he had retained back in 2003 related to his second application. After additional discovery and the deposition of Dr. Hall, the State filed an amended motion for summary dismissal. Following a hearing, the district court granted the State's motion. This appeal followed.

III. **Discussion.**

A. **Whether the district court erred in finding that Dr. Hall's diagnosis of "dissociative amnesia" did not constitute a new ground of fact?**

Iowa Code section 822.3 states:

All other applications must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo issues. However, this limitation does not apply to a ground of fact or law that could not have been raised within the applicable time period.

On appeal, LeGear argues the exception—"this limitation does not apply to a ground of fact or law that could not have been raised within the applicable time period"—applies because the medical condition amnesia that he experienced

during the crime and up to trial, as well as before the limitation period expired, was not then properly diagnosed. The basis of LeGear's argument is that in 2003 he was evaluated by his psychiatric expert, Dr. Hall, a forensic psychiatrist. In 2018, Dr. Hall again evaluated him and this time assigned a diagnosis of "dissociative amnesia."[5] LeGear argued the new diagnosis supports his claims that he did not have the requisite intent to commit first-degree murder, he was incompetent to stand trial, and his trial counsel was ineffective for failing to request LeGear be re-evaluated before trial. LeGear concludes because this diagnosis came about after he stood trial and more than three years from the date that procedendo issued, the exception to the three-year limitation applies.

The district court addressed this contention in its ruling.

Initially LeGear claimed he could not remember the details of the events that led up to Donna Kresl's death. On March 3, 1982 LeGear received a psychiatric examination to determine his competency to stand trial. The examination consisted of a complete review of LeGear's psychiatric history, psychological testing, a physical exam, various tests to review LeGear's social abilities, and an electroencephalogram. Based on the examination the physician determined that LeGear was competent to stand trial. It was determined that LeGear could distinguish right from wrong, and had the capacity to form the requisite intent consistent with legal accountability.

Amnesia symptoms were discussed during LeGear's competency evaluation. LeGear shared with the doctors about his fragmented memories of the event and claimed he was suffering from amnesia. LeGear's amnesia and his ability to remember were specifically reviewed during the competency exam. The doctor questioned the amnesia because the evidence showed that after Donna Kresl's death, LeGear told the eye-witness that the eye-witness was an accessory of the crime and he "should get his story

---

[5] "Dissociative amnesia is a disorder characterized by retrospectively reported memory gaps." Stephanie Leong, MD, Wendi Waits, MD, & Carroll Diebold, MD, *Dissociative Amnesia and DSM-IV-TR Cluster C Personality Traits*, 3 Psychiatry (Edgmont) 51-5 (2006), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2990548/.

straight." The doctor still discussed possible causes for the amnesia in the report.

LeGear claimed that he first began to recall important details of the events immediately before the criminal trial. LeGear claimed that the amnesia continued during preparation for trial, which was key to trial counsel's strategy. LeGear claimed he began to remember the events right before trial and requested another competency examination. LeGear testified at his criminal trial regarding the reclaimed memories that the death of Donna Kresl was an accident. LeGear was convicted of murder in the first degree by jury verdict.

In 2003 LeGear employed an expert, Dr. Hall, to assist with a postconviction application. Dr. Hall opined that at the time of Donna Kresl's death, LeGear suffered from the phenomenon of traumatic amnesia. In 2003 traumatic amnesia was not a diagnosis or disorder found in the DSM-IV-TR. Dr. Hall opined that LeGear went through a stressful situation during and as a result of the alleged crime that caused the amnesia. Dr. Hall opined that LeGear's trial counsel should have changed strategy and requested a new competency examination before trial, once LeGear regained his memories.

In 2018, Dr. Hall re-evaluated LeGear and the case. Dr. Hall found a categorized diagnosis and disorder for LeGear's symptoms in the DSM-V, published in 2016, which did not exist in 2003. Dr. Hall noted there was a change in the language between the DSM-V and DSM-IV-TR. After the re-evaluation Dr. Hall gave the opinion that LeGear suffered from Dissociative Amnesia which predated the death of Donna Kresl. According to Dr. Hall the condition was triggered when LeGear was threatened by LeGear's perception of a threat that he would be returned to jail. This opinion derives from the fact that an eye witness indicated that shortly prior to the crime, Donna Kresl threatened to have the police arrest LeGear. This new diagnosis is in large part the basis for LeGear's present postconviction claims.

(Citations omitted).

The State urged that the issue of amnesia was known at the time of trial and LeGear's application was not preserved by the exception to the three-year limitation. The district court noted that LeGear had the burden to show that the issue was discovered after the verdict and could not have been "discovered earlier in the exercise of due diligence." *Jones v. State*, 479 N.W.2d 265, 274 (Iowa 1991). Our court has also stated Iowa Code Section 822.3's ground of fact or law

exception "is to provide relief from the limitation period when an applicant had 'no opportunity' to assert the claim before the limitation period expired" and "the focus of our inquiry has been whether the applicant was *or should have been 'alerted' to the potential claim* before the limitation period expired." *Cornell v. State*, 529 N.W.2d 606, 610 (Iowa Ct. App. 1994) (emphasis added) (citation omitted).

Our supreme court has more recently commented in a statute of limitations context what it means to be alerted:

> Specifically as to imputed knowledge, once a plaintiff learns information that would alert a reasonable person of the need to investigate, the plaintiff "is on inquiry notice of all facts that would have been disclosed by a reasonably diligent investigation." "[T]he duty to investigate does not depend on exact knowledge of the nature of the problem that caused the injury" because "[i]t is sufficient that the person be aware that a problem existed."

*Skagburg v. Gately*, 911 N.W.2d 786, 794 (Iowa 2018) (alterations in original) (citations omitted).

Applying these legal standards, the district court found that the amnesia issue had been raised during the trial.

> While the name of the diagnosis may be new, the fact that LeGear suffered from symptoms of amnesia at the time of his criminal trial is not. As Dr. Hall explained, LeGear's symptoms of amnesia predated the criminal trial. Dr. Hall opined that LeGear should have been re-evaluated before the criminal trial when LeGear's memories returned. Notably, this recommendation was not new in her 2018 report. Dr. Hall gave the same opinion in 2003 to assist LeGear with his second postconviction application. Therefore the symptoms of amnesia were known in 2003 when Dr. Hall diagnosed LeGear with traumatic or psychogenic amnesia. LeGear and his criminal trial counsel were also aware of the symptoms of amnesia before and during his criminal trial. Amnesia was discussed in preparation for the criminal trial at LeGear's competency hearing. According to LeGear's current application he also discussed the issue of his amnesia with his trial counsel, and he requested another psychological examination. Further, LeGear testified at his criminal

trial that he could not remember certain details concerning the evening of June 26, 1981, including the reason for fighting with Donna Kresl before holding her over the bridge railing.

Therefore, LeGear was aware of his symptoms of amnesia as early as the criminal trial. He certainly was aware of the amnesia symptoms in 2003 when he was diagnosed with traumatic amnesia. Because the symptoms of amnesia were known to LeGear as early as the criminal trial, any defenses that derive from the new diagnosis of Dissociative Amnesia were also available. The claims are therefore barred as untimely because the defenses were available within the time restraint under § 822.3. There is not a genuine issue of material fact, and summary disposition should be granted on this issue.

(Citations omitted).

We also note in his pro se supplemental reply brief, LeGear personally concedes "as asserted in 'Appellee's Brief,' the 'possibility of amnesia arose with expert testimony in 1982 . . . .'" We agree with the district court and the State that the only thing new in this case was the psychiatric terminology or label.

Upon our review, we are convinced that the district court applied the proper law and that the findings are supported by substantial evidence. LeGear failed to meet his burden to show that the issue was discovered after the verdict and could not have been discovered earlier in the exercise of reasonable diligence.[6]

---

[6] As the district court found, Dr. Hall was retained while LeGear's second PCR application was pending and was deposed in 2003. At that time, she opined that LeGear suffered traumatic amnesia, hysterical amnesia, or psychogenic amnesia. Later, she acknowledged that these are all terms for the same mental condition as "dissociative amnesia." Our court has previously held that if an applicant relies on a new ground of law exception, the PCR application must be filed within three years of when the new ground of law becomes available. *See Burkett v. State*, No. 14-0998, 2015 WL 5278970, at *1–*2 (Iowa Ct. App. Sept.10, 2015). The same logic would apply to a new ground of fact—an applicant must file a PCR application within three years of when the new ground of fact becomes known. In this case, LeGear was obligated to file his third PCR application within three years from when Dr. Hall issued her 2003 report. LeGear's third PCR application filed in 2016 raising the amnesia claim is clearly beyond the three-year limitation imposed on a new ground of fact and was untimely for this reason also.

B. **Whether the district court erred in finding that the *Gillam* opinion did not constitute a new ground of law for raising the psychiatric issue?**

Next, LeGear contends that our opinion in *Gillam* provides him with a new ground of law to raise his psychiatric issue in the current application, outside the three-year limitation. 2014 WL 468022, at *1–2. LeGear argues that in *Gillam* the appellant's application for PCR was dismissed because she was aware of her mental-health condition prior to the original trial. *Id.* at *1. LeGear claims, unlike Gillam, he was neither aware of his diagnosis nor his condition, which makes his situation different.

As the district court pointed out, to avoid the statute of limitations, LeGear must show there has been a "change in the law that would [a]ffect the validity of the conviction." *Nguyen v. State*, 829 N.W.2d 183,188–89 (Iowa 2013) (alteration in original).

First, *Gillam* is distinguishable on its facts. In *Gillam*, the applicant had been convicted of robbery in 2002. 2014 WL 468022, at *1. It was acknowledged that at the time of trial she had mental-health issues. *Id.* at *2. She claimed in her PCR proceeding that in 2009 she had received a "new" diagnosis—not one that necessarily related back to the time of her crime and conviction. *See id.* at *2. As our court pointed out, Gillam did not establish how this new diagnosis related back to her conviction. *Id.* Here, LeGear does not claim he has some new psychiatric disorder that was diagnosed in 2018. Rather, it is that he has an expert witness who in 2018 diagnosed and labelled a psychiatric condition based upon LeGear's symptoms and related psychological and psychiatric reports as to his mental condition that existed in 1981 and 1982 at the time of the crime and his trial—a

diagnostic label not recognized until recently and more than thirty-seven years after the crime and trial.

We also agree with the district court and do not read our unpublished opinion in *Gillam* to create a new ground of law to apply to LeGear. The law is the same. Under *Gillam*, a PCR applicant has the burden to establish the exception that a new ground of fact or law was not discoverable and could not be presented before expiration of the three-year limitation in Iowa Code section 822.3. Since *Gillam* did not create new law, it does not provide LeGear with an exception to the three-year limitation.

C. **Whether the district court erred in finding that LeGear's claim of lack of effective legal representation in his criminal trial due to his criminal trial attorney not being licensed in Iowa was barred by the three-year limitation in Iowa Code section 822.3.**

We must first address the appropriate standard of review. LeGear asserts that since his claim involves a constitutional Sixth Amendment right to counsel issue, our review should be de novo. *See Goode v. State*, 920 N.W.2d 520, 523 (Iowa 2018). The State contends the review standard here should still be for correction of errors at law since the true issue is not the legal representation but whether LeGear timely raised the issue. We agree with the State and apply the correction-of-errors-at-law standard.

LeGear alleged in his PCR application that his attorney was not competent due to not being licensed to practice law in the State of Iowa, did not comply with the requirements to appear pro hac vice, and thus was not qualified to represent LeGear. LeGear further claimed he had no reason to know his criminal trial counsel was not licensed in Iowa until May 2013. The district court found: "In 1984

LeGear obtained counsel and claimed ineffective assistance on his direct appeal of conviction. LeGear could have discovered any licensing discrepancy within the three year time frame. Therefore the claims against the court and counsel are not new and are time barred under § 822.3."

The district court, in its ruling on the State's motion for summary dismissal, took judicial notice of Pottawattamie County criminal file FECR081769, LeGear's prosecution for murder. In that file, is a handwritten letter dated June 23, 1996, LeGear sent to the Pottawattamie Clerk of Court,[7] and as follows:

> Clerk of the Court:
> I had a criminal trial in Pottawattamie County in June of 1982, Criminal No. 18769. I was represented by an Omaha attorney named Daniel Ryberg.[8]
> I need to know if he filed with the Clerk's office, pursuant to Iowa Rules of Court, Rule 116, the written appearance of a resident attorney admitted to practice in the State of Iowa upon whom service may be had in all matters connected with said cause or matter with the same effect as if personally made upon the attorney not admitted to practice in Iowa. Mr. Daniel Ryberg started representing me in Iowa in Sept.-Oct. of 1981. Does your office have record that he filed the necessary written appearance of a resident attorney admitted to practice in the state of Iowa? If you have any such record of a written appearance please forward a copy of said record.
> Your attention to this matter is greatly appreciated. Thank you.

This letter belies LeGear's assertion that he was not on alert until May 2013 that his criminal trial attorney was not licensed in Iowa. Rather, this letter establishes he had such a concern in June 1996 and had started to investigate this possibility. LeGear's claim made in his third application filed in May 2016, some twenty years after this letter, does not support the exception in Iowa Code section

---

[7] Also in the court file is the envelope showing a postmark date of June 24, 1996.
[8] Since Mr. Ryberg was not licensed in Iowa, we presume he was not appointed by the court to represent LeGear; rather he was privately retained by LeGear.

822.3. The district court did not err in finding LeGear's claim regarding his attorney's licensure was untimely and subject to dismissal.[9]

IV. **Conclusion.**

To the extent that LeGear raised numerous other issues before the trial court challenging his conviction, we address only those raised in this appeal, and the district court ruling on those other issues remains dispositive. Having determined the district court did not err in granting the State's motion for summary dismissal, we affirm.

**AFFIRMED.**

---

[9] This court has previously held in *State v. Chadwick*, 586 N.W.2d 391, 393–94 (Iowa Ct. App. 1998), that the failure of defense counsel to be licensed in Iowa does not constitute per se lack of counsel or ineffective assistance of counsel.