# IN THE COURT OF APPEALS OF IOWA

No. 24-0664
Filed June 18, 2025

**CHRISTOPHER RAY LeGEAR,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Pottwattamie County, Michael Hooper, Judge.

An applicant appeals the grant of summary disposition of his fourth application for postconviction relief. **AFFIRMED.**

Kent A. Simmons, Bettendorf, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee State.

Considered without oral argument by Greer, P.J., and Langholz and Sandy, JJ.

**GREER, Presiding Judge.**

Christopher LeGear was convicted of first-degree murder in 1982 after trial by jury. Following that conviction, LeGear pursued various legal paths, including a direct appeal and then multiple unsuccessful applications for postconviction relief (PCR). LeGear filed his fourth PCR application more than four decades after trial, alleging a new ground of fact that his recent flashbacks, which followed from his previously diagnosed dissociative amnesia, allowed him to remember pertinent facts absolving him of the murder.[1] The district court granted summary disposition of his fourth PCR application, finding it was time-barred. On our review, we find that LeGear did not raise a new issue of fact so his instant PCR petition is time-barred under Iowa Code section 822.3 (2023). For reasons detailed below, we affirm the dismissal of the fourth PCR application.

## I. Background Facts and Proceedings.

In LeGear's direct appeal from his conviction, affirmed in 1984, our supreme court summarized the facts as:

> On the night of June 26, 1981, [LeGear] invited his friend, Rex Larrison, to meet him in an Omaha, Nebraska, bar and then to drive him across the river to Crescent, Iowa, where [LeGear] intended to collect a debt. While at the bar, [LeGear] and Larrison ran into the victim, Donna Kresl, [LeGear]'s sometime girl friend. There is no suggestion this meeting was planned. After a few drinks, the three left the bar . . . . Relations between [LeGear] and Kresl were amicable, but during the return to Nebraska, the two began discussing a motorcycle accident in which they had been involved and for which Kresl had sought compensation from defendant. [LeGear] became angry and repeatedly asked Larrison to stop the

---

[1] "Dissociative amnesia is a disorder characterized by retrospectively reported memory gaps." Stephanie Leong, MD, Wendi Waits, MD, & Carroll Diebold, MD, *Dissociative Amnesia and DSM-IV-TR Cluster C Personality Traits*, 3 Psychiatry (Edgmont) 51-5 (2006), https://perma.cc/7X3Q-NYTS.

car. He did not give Larrison any reason for these requests, but later testified his purpose was to remove Kresl from the vehicle.

Larrison finally stopped the car in the westbound lane of the Iowa-Nebraska Morman Bridge, at a point later identified as being on the Iowa side of the Missouri River. [LeGear] then pulled Kresl from the car and held her over the bridge railing. At that point the bridge was some sixty-five feet above the river. According to Larrison, [LeGear] then threw Kresl into the river. According to [LeGear], Kresl fell out of his arms and into the river below. When [he] returned to the car, [LeGear] told Larrison the victim "was swimming." Larrison testified [LeGear] also commented "she deserved it." The two men then decided to dispose of Kresl's purse and personal effects. Neither apparently made any attempt to ascertain whether she had survived or to seek help in case she had. Instead[,] they later met and fabricated a cover story that [LeGear] subsequently related to the police.

[Kresl's] body was retrieved from the Iowa side of the Missouri River a few days later; her death, according to medical testimony, was caused by drowning. When Larrison learned Kresl was dead, he contacted the Omaha police department. He later served as the State's star witness in this case.

*State v. LeGear*, 346 N.W.2d 21, 22 (Iowa 1984). At his criminal trial, LeGear claimed he did not have the requisite intent for premeditated murder. LeGear claimed that "when he pulled Kresl from Larrison's car his only purpose was to scare her by holding her over the bridge rail. He assert[ed] he had no intention to kill her, but was powerless to prevent her fall." *Id*. at 23–24. Discounting LeGear's version, the jury found him guilty of first-degree murder, and the supreme court concluded that "[b]ecause there was substantial evidence enabling the jury to find premeditation, we will not second-guess their verdict." *Id*. at 24. On direct appeal, LeGear also raised issues of ineffective assistance of counsel, but the supreme court determined those challenges would have to be considered on a record developed in PCR proceedings. *Id*. at 25. Procedendo issued on April 12, 1984.

Ultimately, LeGear pursued PCR three times before this current PCR action. Addressing his third PCR application, our court summarized LeGear's post-trial proceedings as follows:

>        After losing his direct appeal, LeGear filed his first application for PCR, which was denied, and our court affirmed in 1990. *See LeGear v. State*, No. 88-406, 1990 WL 171693 (Iowa Ct. App. May 24, 1990). LeGear then filed a habeas corpus petition in federal court, which was denied, and the Eight Circuit Court of Appeals affirmed it in 1993. *See LeGear v. Nix*, No. 93-1283, 1993 WL 411474 (8th Cir. Oct. 15, 1993). Thereafter, LeGear filed his second application for PCR in 1996, and in 2005 our court affirmed denial of that application as untimely. *See LeGear v. State*, No. 04-1125, 2005 WL 1963038 (Iowa Ct. App. Aug. 17, 2005).
>        Finally, LeGear filed [his third] application . . . on May 12, 2016.

*LeGear v. State*, No. 19-0465, 2020 WL 5229176, at *3 (Iowa Ct. App. Sept. 2, 2020). As part of his third PCR application, LeGear argued his 2018 diagnosis of dissociative amnesia was a new ground of fact entitling him to a new trial, which allowed him to raise this issue beyond the three-year limitation in Iowa Code section 822.3 (2016). *Id.* The third PCR court rejected his argument, noting that LeGear

>        claimed that he first began to recall important details of the events immediately before the criminal trial. LeGear claimed that the amnesia continued during preparation for trial, which was key to trial counsel's strategy. LeGear claimed he began to remember the events right before trial and requested another competency examination. LeGear testified at his criminal trial regarding the reclaimed memories that the death of Donna Kresl was an accident. . . .
>        In 2003 LeGear employed an expert, Dr. Hall, to assist with a postconviction application. Dr. Hall opined that at the time of Donna Kresl's death, LeGear suffered from the phenomenon of traumatic amnesia. In 2003 traumatic amnesia was not a diagnosis or disorder found in the DSM-IV-TR. Dr. Hall opined that LeGear went through a stressful situation during and as a result of the alleged crime that caused the amnesia. Dr. Hall opined that LeGear's trial counsel

should have changed strategy and requested a new competency examination before trial, once LeGear regained his memories

In 2018, Dr. Hall re-evaluated LeGear and the case. Dr. Hall found a categorized diagnosis and disorder for LeGear's symptoms in the DSM-V, published in 2016, which did not exist in 2003. Dr. Hall noted there was a change in the language between the DSM-V and DSM-IV-TR. After the re-evaluation Dr. Hall gave the opinion that LeGear suffered from Dissociative Amnesia which predated the death of Donna Kresl. According to Dr. Hall the condition was triggered when LeGear was threatened by LeGear's perception of a threat that he would be returned to jail. This opinion derives from the fact that an eye witness indicated that shortly prior to the crime, Donna Kresl threatened to have the police arrest LeGear.

*Id*. at *4 (quoting district court ruling). That PCR court also noted that the 2018 diagnosis recategorized LeGear's condition to dissociative amnesia, which was "in large part the basis for [his] present [PCR] claims." *Id*. Affirming the PCR court's decision that LeGear's third PCR application was time-barred, the panel concluded that "LeGear failed to meet his burden to show that the issue was discovered after the verdict and could not have been discovered earlier in the exercise of reasonable diligence." *Id.* at *6.

The PCR application at issue here, LeGear's fourth, was filed in October 2023. LeGear argued he was actually innocent of the murder, asserting Larrison was solely responsible for Kresl's death and that Larrison had him physically assaulted and threatened additional violence if he did not "take the fall" and "keep [his] mouth shut about Larrison." LeGear claimed the inculpatory statements he previously made were not voluntarily given. The PCR court determined that LeGear had not shown any reason why his application was not subject to the statute of limitations under Iowa Code section 822.3, concluding:

LeGear's claims are not the type of ground of fact or law that could not be raised within the applicable time period for postconviction relief applications. LeGear clearly would have known of Larrison's

alleged threatening and assaultive behavior at the time of the underlying criminal proceeding and/or at the time of his first, second, or third postconviction actions, and has not shown that this claim could not have been raised earlier.

(Quotation marks omitted.)

LeGear appeals from the grant of summary disposition on his fourth PCR application. After review, we affirm the dismissal of the PCR application but for reasons different than those advanced by the PCR court.

## II. Standard of Review.

Our appellate courts "ordinarily review summary dispositions of PCR applications for correction of errors at law." *Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019). "The court may grant a motion by either party for summary disposition of the application, when it appears . . . there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 729–30 (quoting Iowa Code § 822.6(3)). "[W]e review claims of ineffective assistance of counsel de novo." *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

## III. Discussion.

On appeal, LeGear sets forth two separate challenges—the district court prematurely granted summary dismissal without allowing him to fully develop his claim with expert testimony after he discovered new facts about what happened on the bridge; there were genuine issues of material fact to be resolved such that summary disposition on the time-bar question was not appropriate. And, on the second challenge, LeGear asserts counsel for his fourth PCR petition was ineffective such that there was structural error. The State responds that dismissal was appropriate because LeGear's fourth PCR petition was time-barred.

### A. Timeliness.

Iowa Code section 822.3 states:

All other applications must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo issues. However, this limitation does not apply to a ground of fact or law that could not have been raised within the applicable time period.

Because LeGear brought this PCR action more than thirty-five years after the statute of limitations ran, it was LeGear's challenge to show that there was some new ground of fact or law that exempted his fourth PCR filing from the application of the statute of limitations. He maintains he did not have the chance to make his showing, complaining his basis for his PCR filing was not developed at the time the State's motion for summary disposition was heard, and the PCR court ignored his requests for more time and for retention of an expert. LeGear points to *Linn* in support of his argument that the PCR court should have granted his pro se motion to hire an expert to discuss his new memories.[2] *See* 929 N.W.2d at 753–54 (finding PCR court erred by granting summary judgment on the merits as the applicant demonstrated a reasonable need to hire a battered woman syndrome expert and should have been allowed to fully develop the record to show trial counsel provided ineffective assistance by failing to introduce the evidence as part of a justification defense).

---

[2] PCR counsel submitted Exhibit A at the PCR hearing, which included several documents prepared by LeGear: (1) a motion to resist State's motion for summary disposition and (2) a November 27 handwritten note from LeGear to the court. The pro se motion to retain an expert was not filed by LeGear until after the PCR hearing.

Taking only the allegations enumerated in the PCR application as filed by LeGear, the district court summarized LeGear's argument in the instant PCR application as

> a freestanding claim of actual innocence for the crime for which he was convicted, First-Degree Murder. LeGear asserts Rex Larrison (State's Star Witness) was solely responsible for the victim's death and thereafter, prior to LeGear's arrest, had LeGear physically assaulted and threatened with more physical harm by Larrison's friends "to take the fall or else" and "keep your mouth shut about Larrison," and Larrison prior to LeGear's arrest, threatening physical harm to LeGear and his family (who were unaware) if he did not take responsibility for the victim's death and maintain silence regarding Larrison . . . .

The PCR court focused it decision on those contentions. And, if taken as an actual innocence claim, these claimed statements by Larrison were facts available to LeGear within the statute-of-limitations period as the PCR court found. *See Quinn v. State*, 954 N.W.2d 75, 77 (Iowa Ct. App. 2020) (holding that a freestanding claim of actual innocence "does not apply to overcome the statute of limitations where the evidence put forward to support a claim of actual innocence was available to the applicant or could have been discovered with due diligence within the limitations period").

But after the hearing on the State's motion for summary disposition, LeGear filed his own pro se motion for expert witness fees along with a sworn affidavit signed by him and a letter to his PCR counsel asking him "to file them ASAP before [the court] issues a ruling after today's hearing." In that affidavit, LeGear asserted that the day after Kresl's death he had "no memory for the events on the bridge" even though he had earlier testified at the criminal trial to details that described the fall as an accident. And he claimed that he only realized what happened on the

bridge in 1981 after experiencing "sudden flashbacks" in early 2023. The affidavit also detailed the diagnoses made by Dr. Kathryn Hall, a forensic psychiatrist, in 2003 (traumatic amnesia) and in 2018 (dissociative amnesia). Regarding these assertions, the State argues in its appellate brief that LeGear's claim that he now remembers who killed Kresl does not allow LeGear to proceed to the merits.

In its ruling dismissing the application, the PCR court did not address the claim that this new version of what had happened only became known to LeGear in early 2023.[3] But even though LeGear alleges that he remembered these facts within the last six months, his amnesia condition was not "newly discovered evidence." He admitted during his third PCR proceeding that he was aware of his amnesia during trial court proceedings, as far back as 1982, and he was formally diagnosed in 2003 and more specifically in 2018.

Even viewing the record in the light most favorable to LeGear, LeGear cannot overcome the application of the three-year statute of limitations with his almost four-decade old claim. First, our court already determined that:

> Dr. Hall was retained while LeGear's second PCR application was pending and was deposed in 2003. At that time, she opined that LeGear suffered traumatic amnesia, hysterical amnesia, or psychogenic amnesia. Later, she acknowledged that these are all terms for the same mental condition as "dissociative amnesia." Our court has previously held that if an applicant relies on a new ground of law exception, the PCR application must be filed within three years of when the new ground of law becomes available. *See Burkett v. State*, No. 14-0998, 2015 WL 5278970, at *1–*2 (Iowa Ct. App. Sept. 10, 2015). The same logic would apply to a new ground of fact—an applicant must file a PCR application within three years of when the new ground of fact becomes known. In this case, LeGear was obligated to file his third PCR application within three years from

---

[3] As the court "examining the propriety of summary judgment," we must "view the entire record in the light most favorable to the nonmoving party." *Linn*, 929 N.W.2d at 730 (citation omitted).

> when Dr. Hall issued her 2003 report. LeGear's third PCR application filed in 2016 raising the amnesia claim is clearly beyond the three-year limitation imposed on a new ground of fact and was untimely for this reason also.

*LeGear*, 2020 WL 5229176, at *8 n.6. As was the case before when LeGear could not use his amnesia condition as a new ground of fact, so it is now. LeGear was on notice that he had a condition he asserts impacted his ability to remember events. With that information, he had a duty to investigate the effects of the amnesia, including whether the events in 1981 on the bridge, were accurate as LeGear earlier testified or as he now characterizes the events. *See id.*; *Skagburg v. Gately*, 911 N.W.2d 786, 794 (Iowa 2018) ("Specifically as to imputed knowledge, once a plaintiff learns information that would alert a reasonable person of the need to investigate, the plaintiff 'is on inquiry notice of all facts that would have been disclosed by a reasonably diligent investigation.' '[T]he duty to investigate does not depend on exact knowledge of the nature of the problem that caused the injury' because '[i]t is sufficient that the person be aware that a problem existed.' (internal citations omitted)).

We note that this is not a situation where LeGear had no memory at the time of the underlying criminal trial and now the memory is back. As to LeGear's earlier version that the fall from the bridge was an accident, LeGear testified under oath about his role in the "accident"; "convinc[ed] two out of three mental health professionals that he had no intent to murder his victim"; and claimed that he "*first began to recall* important details of the even immediately before the criminal trial," "*began to remember* the events right before trial," and testified at his criminal trial regarding *reclaimed* memories." *LeGear*, 2020 WL 5229176, at *2, *4 (emphasis

added). So, the amnesia diagnosis cannot serve as a basis to exempt this challenge from the application of the statute of limitation under these facts as it does not constitute a "ground of fact . . . that could have not been raised" within the three-year period. *See* Iowa Code § 822.3. Because LeGear's PCR application was filed more than thirty-five years after procedendo ran and the amnesia related claim raised in the instant PCR application is not a new ground of fact; his fourth PCR application is time-barred. As a result, we affirm the grant of summary disposition.[4]

### B. Ineffective Assistance of Counsel.

On this challenge, LeGear asserts his PCR counsel was ineffective because he failed to request an expert to adequately prepare the case and did not adequately contest the State's motion for summary disposition. "To prevail on a claim of ineffective assistance of counsel, the applicant must demonstrate both ineffective assistance and prejudice." *Ledezma*, 626 N.W.2d at 142; *see Strickland v. Washington,* 466 U.S. 668, 687 (1984). "To establish [ineffective assistance], the applicant must demonstrate the attorney performed below the

---

[4] While LeGear contends that his case is like *Linn* so the district court should have allowed him to hire an expert and develop his defense, *Linn* is distinguishable because there the PCR application was timely filed. In *Linn*, to survive summary judgment, the applicant needed to raise a genuine issue of material fact whether her trial counsel provided ineffective assistance by failing to introduce evidence of battered woman syndrome as part of a justification defense. 929 N.W.2d at 753. Yet the court granted the State's application for summary disposition while the applicant was still waiting to learn if the court would approve her request for a court-appointed expert, and the court made the mistaken determination the undisputed record established counsel made a strategic decision not to pursue battered woman syndrome. *Id.* Here, LeGear had the benefit of experts who explored his theory of amnesia early on in his case history and his defense was formulated and reviewed in several district court proceedings. Given our determination related to the statute of limitations, we do not consider this argument further.

standard demanded of a reasonably competent attorney." *Ledezma*, 626 N.W.2d at 142. For the second prong, prejudice results when counsel failed "to perform an essential duty" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Harrison*, 914 N.W.2d 178, 206 (Iowa 2018) (cleaned up). "Because the test for ineffective assistance of counsel is a two-pronged test, a defendant must show both prongs have been met. If the defendant fails 'to establish either of these elements, we need not address the remaining element.'" *Nguyen v. State*, 878 N.W.2d 744, 754 (Iowa 2016) (citation omitted).

Specifically, LeGear complains his counsel was not responsive, wholly relied on abrogated precedent for their initial resistance, and did not file a resistance to the State's motion for summary disposition until half an hour before the motion hearing. He also claims counsel failed to secure an expert witness for the proceedings. But given the statute-of-limitations problem he faced, LeGear has not shown there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Harrison*, 914 N.W.2d at 206. Simply put, LeGear's claim in his fourth PCR was time-barred and worthy of summary disposition. No action taken by counsel would change the timeliness issue that underscored his PCR petition. As a result, we find LeGear failed to show prejudice and his ineffective-assistance-of-counsel claim fails. *See Millam v. State*, 745 N.W.2d 719, 721–22 (Iowa 2008) (finding trial counsel has no duty to raise an issue that has no merit).

**IV. Conclusion.**

We affirm the summary dismissal of LeGear's fourth PCR application.

**AFFIRMED.**