STATE of Iowa, Appellee,

v.

Charles Jay GULLY, Appellant.

No. 83–41.

Supreme Court of Iowa.

April 11, 1984.

Charles L. Harrington, Appellate Defender, and Patrick R. Grady, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., and Catherine Tinker, County Atty., for appellee.

HARRIS, Justice.

The question in this appeal from a first-degree murder conviction is whether evidence should have been suppressed. Defendant insisted before and throughout the trial, and urges as his sole assignment on appeal, that certain evidence and inculpatory statements were fruits of a warrantless arrest in violation of the fourth and fourteenth amendments of the United States constitution. The trial court rejected the contention and we affirm.

On the night of March 18, 1982, a young Fort Dodge woman was found murdered near a mobile trailer home where she had been babysitting. Her body was only partially clothed, and there was evidence she had been raped. Her death resulted from two stab wounds.

The person for whom the victim was babysitting had been gone for only two hours. The trailer was in disarray. A wallet, which contained a YMCA card with defendant's name on it, was found on a table.

Approximately noon the following day a Fort Dodge police officer saw defendant walking across a parking lot. According to the officer's testimony, the police department had informed its officers that "if anybody saw Charles Gully . . . he was wanted for questioning, and bring him down to the police station." The officers were told Gully was wanted in an investigation of the homicide.

▮ The officer pulled alongside defendant in a marked squad car, asked if he was Charles Gully and, upon learning he was, said "they want to talk to [you] down at the station." Defendant asked what he was wanted for, and the officer denied knowing. We do not condone the officer's lack of candor in answering the question, or in failing to advise defendant he did not have to go to the station. Nevertheless, under the totality of the circumstances, we do not think these failures affected defendant's willingness to go to the station.

▮ The officer and defendant do not agree about what was said next. The officer testified defendant simply got into the car; defendant testified he was told to get into the car. On our *de novo* review, *State v. Harlan*, 301 N.W.2d 717, 718 (Iowa 1981), we accept the officer's version. The officer merely told defendant he was wanted at the station and nothing more. The officer made no physical move to subject defendant to his custody. The defendant was neither handcuffed nor formally arrested. He did not appear to be nervous.

If defendant felt somewhat constrained to get into the police car, it was not because he was compelled by the officer. The officer was careful not to tell defendant he had been directed to bring him in. He merely told defendant they "want to talk to [you] down at the station." From that point the officer's silence was the only thing to which defendant could react. That reaction was simply to get into the car voluntarily. It was not a submission to a show of authority.

When defendant stepped through the station door, an officer immediately noticed he was wearing wet tennis shoes which left a tread imprint similar to a mark on the victim's face. Defendant was then informed of his *Miranda* rights and agreed to talk, stating "I ain't got nothing to hide." It soon appeared, however, that he did. He became hopelessly entwined in his contradictions and disclosures. The police obtained a warrant to seize defendant's clothing and shoes and to search his house. The searches resulted in incriminating evidence, and defendant was formally arrested later that night.

I. In *Harlan*, 301 N.W.2d at 719–20, we said:

The fourth amendment's protection against unreasonable intrusions on a person's liberty arises when an officer seizes a person. *United States v. Mendenhall*, 446 U.S. 544, 552, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497, 507 (1980) (two justices); *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 903 (1968). Once there is a seizure, it must be founded on an objective justification.

In determining when Harlan was seized, it is important to remember that "not all personal intercourse between policemen and citizens involves 'seizures' of persons" that implicate the fourth amendment. [Citing *Terry*.] A seizure occurs "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." [Authorities.]

Although each case must be decided on its facts, there are some guidelines as to when a person's liberty has been restrained by "physical force or show of authority." If an officer takes hold of a suspect, a seizure has occurred. [Citing *Terry*.] A seizure might occur if there was "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance might be compelled." [Citing *Mendenhall*.] The use of sirens, flashing lights or other signals to pull a moving vehicle to the side of the road might also constitute a show of authority that is a seizure. [Authority.] One commentator suggests that a seizure occurs "if the officer engaged in conduct which a reasonable man would view as threatening or offensive even if coming from another private person." [Authority.]

*See also Florida v. Royer*, —— U.S. ——, ——, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983) ("If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed.")

■ Although probable cause is the objective justification normally required when a person is seized, the United States supreme court carved an exception to this requirement in *Terry v. Ohio*, 392 U.S. at 16–19, 88 S.Ct. at 1877–79, 20 L.Ed.2d at 903–04 (1968). The *Terry* exception, however, is limited to brief, on-the-spot detentions. *Dunaway v. New York*, 442 U.S. 200, 216, 99 S.Ct. 2248, 2258, 60 L.Ed.2d 824, 838 (1979) (probable cause required to transport defendant involuntarily to police station for interrogation).

Our task is to decide whether defendant was seized at any point during his encounter with the police and, if so, whether the seizure was based on probable cause.

■ II. The *Dunaway* situation is not before us because defendant was not seized at the initial stop. The officer merely pulled alongside him, asked his identity, and said he was wanted at the police station. The fourth amendment was not implicated because there was nothing done in the initial stop to restrain defendant. In *Royer*, —— U.S. at ——, 103 S.Ct. at 1324, 75 L.Ed.2d at 236, the court explained:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. [Authorities.]

It is argued that defendant submitted to the authority of a uniformed officer in a marked patrol car, and the statement that he was wanted at the station. Defendant thinks these circumstances were enough to compel him to submit. This argument suggests that an outright command to submit was withheld by the officer merely to render the confrontation ambiguous and to thereby conceal from our review that which was made obvious to the defendant: that he had to submit to authority and accompany the officer to the station.

■ We do not agree. Something more is required for a seizure than occurred here. For a seizure there must be something uttered or done which would amount to an objective indication that the officer exercised some dominion over the person seized. Under the record here we think defendant went along willingly in the hope that the authorities would believe he had, to use his own words, "nothing to hide."

■ III. We turn to the interrogation at the police station. Even if defendant was seized at some point during his interrogation there, by then the officers had the requisite probable cause for a seizure. As soon as defendant entered the police station, an officer noticed defendant's gym shoe print appeared to match the mud pattern found on the victim's face. This fact, coupled with the fact of the wallet in the trailer house, amounted to probable cause. *See Children v. Burton*, 331 N.W.2d 673, 679–80 (Iowa 1983) ("probable cause" defined).

We conclude the trial court did not err in overruling defendant's motion to suppress the evidence against him. He was seized at a time when the officers had probable cause to seize him. Because defendant's assignment is without merit, the judgment against him is affirmed.

AFFIRMED.

All Justices concur except McCORMICK, J., who takes no part.