**STATE of Iowa, Plaintiff–Appellee,**

v.

**PANY THONG SYSOUVONG,
Defendant–Appellant.**

No. 87–537.

Court of Appeals of Iowa.

Sept. 28, 1988.

Charles L. Harrington, Chief Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Pamela Greenman Dahl, Asst. Atty. Gen., and Paul L. Martin, Co. Atty., for plaintiff-appellee.

Heard by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

OXBERGER, Chief Judge.

This is an appeal from Defendant Pany Thong Sysouvong's conviction, following a jury trial, for first degree murder in violation of Iowa Code sections 707.1 and 707.2. On appeal defendant contends the trial court erred: (1) in overruling his motion to suppress the evidentiary fruits of his illegal arrest; and (2) in overruling his motion to suppress his confession, which was made without a knowing, intelligent, and voluntary *Miranda* waiver. We affirm.

Our review of this constitutional claim is de novo. Reversal is required only when the trial court has abused its discretion in denying the motion. *State v. Spargo*, 364 N.W.2d 203, 207 (Iowa 1985).

Defendant is a native of Laos. On October 25, 1985 he attended a party where a

fight broke out between some Laotian men and two Mexican men, Nicholas Gomez and Jesse Barrientes. Barrientes received several nonlethal stab wounds. Gomez was fatally stabbed. A knife was found in the street nearby. Barrientes testified that it was not the defendant who stabbed him. Blood was found on the defendant's clothes and some blood and skeletal muscle was found in the pocket of his jeans.

Defendant resided in Minnesota. On October 29, 1986, a Minnesota police officer was directed to go to the defendant's apartment to inform him that Iowa authorities were at the Worthington Minnesota Law Enforcement Center and wished to speak to him about a party in Mason City. The officer showed the defendant a picture of himself and indicated that some investigators wanted to talk with him at the police station. The defendant was then given a ride to the Law Enforcement Center in the officer's patrol car.

When the defendant arrived at the Law Enforcement Center, he was instructed to sit in a chair in the hallway. After approximately fifteen minutes, an officer came to him and showed him a badge and then took his shoes. The shoes were placed in separate paper bags and stapled shut. The defendant waited approximately another half an hour before he was called into the interrogation room for questioning.

Special Agent Terry Hoil of the Iowa Department of Criminal Investigation testified that he interviewed the defendant at the Law Enforcement Center in Worthington, Minnesota. He had given the defendant his constitutional rights in Laotian and English prior to doing so. An interpreter was used to administer *Miranda* rights as well as throughout the interrogation. Defendant confessed during the interrogation to killing Gomez. Defendant made inculpatory statements to the booking officer and confessed the stabbing to his cellmate at the Cerro Gordo County Jail. Defendant sought to suppress his confessions. The trial court denied his motions. A jury found him guilty of first-degree murder.

## I. MOTION TO SUPPRESS

A. *Illegal Arrest.* Defendant argues that an arrest occurred without "reasonable grounds" either when the defendant was transported from his residence to the Law Enforcement Center, or when the defendant was deprived of his shoes. Defendant contends that because his arrest was illegal his confessions should be suppressed.

■ The fourth amendment states that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated...." It is applicable to the states through the fourteenth amendment. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Harlan*, 301 N.W.2d 717, 719 (Iowa 1981). The fourth amendment's protection against unreasonable intrusions on a person's liberty arises when an officer seizes a person. *State v. Gully*, 346 N.W.2d 514, 516 (Iowa 1984) (citing *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). A seizure occurs "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Gully*, 346 N.W.2d at 516 (citing *State v. Harlan*, 301 N.W.2d 717, 719–20 (Iowa 1981).

In *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) the court explained:

[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions (citations omitted).

■ Setting aside for the moment the fact of the removal of defendant's shoes by the police officer, we find *State v. Gully*, 346 N.W.2d 514 (Iowa 1984) controlling. In *Gully* at page 517 the court said:

Something more is required for a seizure than occurred here. For a seizure there must be something uttered or done which

would amount to an objective indication that the officer exercised some dominion over the person seized. Under the record here we think the defendant went along willingly in the hope authorities would believe he had, to use his own words, 'nothing to hide.'

The record in *Gully* was that the victim was found dead from two stab wounds near a mobile home. In the home a wallet with a YMCA card with defendant's name on it was found on a table. A day later, defendant was walking in a parking lot. A policeman in a marked squad car told the defendant, "They want to talk to [you] down at the station." Defendant got in the squad car and went to the police station. Defendant was informed of his *Miranda* rights and agreed to talk.

We hold that under the *Gully* rule, the defendant in this case was not seized when he went to the police station. He went voluntarily to assist the police in their investigation of the crime.

█ Now we turn to the added fact in this case, the removal of defendant's shoes by the police. The defendant was one of several Laotians interviewed by the police at the police station. All lived in the Worthington, Minnesota, area and had been at the party in Mason City where the killing occurred. All the people interviewed had their shoes removed and the shoes were kept for evidence when the men left the police station. There is no evidence the shoes were removed to inhibit the men from leaving the police station.

The defendant testified he was not placed in handcuffs and no one told him that he was not free to go. The defendant was not guarded, nor was he under any physical restraints, nor had he been instructed not to leave. We conclude the defendant was not arrested until after he confessed his involvement in the crime. According, we find the trial court did not abuse its discretion in overruling defendant's motion to suppress evidence on the grounds of an illegal arrest.

B. *Voluntariness of Statement.* Defendant contends he did not voluntarily, knowingly, and intelligently waive his *Mi-*

*randa* rights. An interpreter was present. Defendant was given his *Miranda* rights in both Laotian and English. However, defendant claims he did not really understand his rights because he did not understand the concepts of the American legal system.

█ The State has a "heavy burden" of proving defendant voluntarily, knowingly and intelligently waived his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1964). We look to the "totality of the circumstances" in determining whether a waiver was voluntarily, knowingly and intelligently made. *State v. Holderness*, 191 N.W.2d 642 (Iowa 1971).

█ Prior to any questioning the defendant was read his rights in both English and Laotian. The defendant said he understood his rights and was willing to discuss the incidents at the party with Agent Hoil. The defendant also signed a waiver of rights form. Defendant bases his claim of not understanding his rights on his lack of understanding at his extradition hearing as to what an attorney is. However, the defendant was not provided an interpreter at the extradition hearing as he was at the initial questioning.

We find a voluntary, knowing and intelligent waiver of *Miranda* rights by the defendant is evidenced by the taped statement and signed statement that he understood his rights as explained to him by the interpreter.

AFFIRMED.