STATE of Iowa, Plaintiff–Appellee,

v.

Gonzalo LEDEZMA, Defendant–
Appellant.

No. 95–36.

Court of Appeals of Iowa.

March 27, 1996.

Ruth Carter and Richard S. Kallsen of Carter & Carter, Sioux City, for appellant.

Thomas J. Miller, Attorney General, Julie H. Brown, Assistant Attorney General, Thomas S. Mullin, County Attorney, and James J. Katcher, Assistant County Attorney, for appellee.

Heard by SACKETT, P.J., and HABHAB and CADY, JJ.

HABHAB, Judge.

Gonzalo Ledezma and his brother (or brother-in-law) Jose were both charged with

kidnapping and sexual abuse on the basis of a complaint made by Marie Joyce Big Bear.

In the early morning hours of August 13, 1994, Marie contacted the police and informed them she had been raped by three Hispanic males. She provided the police with a license plate number of the vehicle in which the men drove away after dropping her off following the assaults. She also told the officers the attack had occurred in a secluded area. A computer check of the license number led law enforcement to a Martin Ledezma Martinez, the owner of the vehicle.

At about 4:00 a.m., police arrived at Martinez's address, located the vehicle described by Marie, and noticed the hood was still warm to the touch, indicating the car had been recently driven. The car had undried mud on the exterior as well as inside. Martinez came out to investigate the police interest in his car. He informed the officers he had not been driving his car, but he had loaned it to someone. Marie was brought to the apartment and shown Martinez and the Hispanic man who was with Martinez. Marie informed the officers neither man was involved in the attack.

When asked if the officers could look in the car, Martinez consented and went inside to get the keys. The officers who followed Martinez inside the apartment house noticed two fully-clothed Hispanic men at the end of the hallway. The officers asked the men some questions and learned neither man spoke English. Martinez was requested to ask these two men if they would go outside with the officers. The two agreed to follow the officers outside. They stood in the stream of the headlights of the vehicle in which Marie was sitting. She identified them as two of her three assailants. Gonzalo Ledezma and Jose Ledezma were placed under arrest.

The Ledezmas filed a motion to suppress based on their argument they were seized without reasonable suspicion. The district court overruled the motion to suppress finding the Ledezmas were not seized, but voluntarily accompanied officers outside the apartment building. The court also found, even if one were to assume the defendants were seized, officers had reasonable grounds for the seizure.

At the bench trial, Marie testified she was at a bar with a friend when she met the Ledezmas. She danced with Jose once and he bought her a beer. The bar was closing and a friend of Marie's announced there was a party and all were invited. The Ledezmas were standing nearby and Marie's friend spoke with them in Spanish. Marie assumed the Ledezmas were going to the party and accepted a ride with them. She climbed into the back seat of the vehicle with Jose. Gonzalo drove and a third man sat in the front passenger seat. This third man, who spoke limited English, said, "We go to party."

The four did not go to the party. Marie testified that, after driving around, they went to a gas station. She became frightened because Jose was making sexual advances and she asked to be let out of the car. She testified Jose placed her in a head lock and would not let her out. The car left the gas station and the four drove around. She struggled and kicked. One of the men in the front seat grabbed her legs and the three men were yelling in Spanish. Eventually they parked in a remote and overgrown area.

Marie asked to leave the car so she could go to the bathroom. Jose escorted her to some weeds, at which time Marie attempted to run away. However, she ran into a fence and, in the process of trying to climb it, Jose grabbed her and pulled her to the ground. He then took off her pants and penetrated her vagina with his penis. After Jose got off her, Marie attempted to get dressed. However, Gonzalo appeared before she could get her pants back on. He pushed her to the ground and held her by the hair. He penetrated her vagina with his penis. When he was finished, the third man also sexually assaulted her.

Marie testified that, after the assaults, the men put her back in the car and then proceeded to drive her home. When she got out of the car near her home, Marie noted the license plate number and called the police from her apartment.

Gonzalo's motions for judgment of acquittal were overruled. The district court found

him guilty of first-degree kidnapping and second-degree sexual abuse and denied his motion to merge the convictions.

Gonzalo appeals.

**I. *Motion to Suppress.*** Gonzalo contends the district court erred in denying his motion to suppress evidence obtained from his arrest. Gonzalo argues he was illegally seized in violation of the Fourth Amendment of the United States Constitution. The scope of review of this issue is de novo since a constitutional issue is raised.

The Fourth Amendment is a protection against unreasonable searches and seizures. U.S. Const. amend. IV. A seizure occurs "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *State v. Gully,* 346 N.W.2d 514, 516 (Iowa 1984) (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889, 905 n. 16 (1968)). "[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons" that implicate the Fourth Amendment. *Id.* Some suggested factors to look for in determining whether a seizure occurred through physical force or a show of authority include: (1) the threatening presence of several police officers; (2) the display of a weapon by an officer; (3) some physical touching of the person of the citizen; or (4) the use of language or tone of voice indicating that compliance might be compelled. *Gully,* 346 N.W.2d at 516.

Gonzalo asserts there was a show of authority seizure based on the officers' wearing of firearms and clubs on their belts, speaking English to a Spanish-speaking citizen, and gesturing and pointing to Gonzalo indicating he was next. We find there was not a seizure in this case.

Gonzalo and his brother were approached by two officers inside the apartment house. The officers did not have their weapons drawn. Officer Enockson testified he used a conversational tone inside the house. Officer Enockson also testified once he learned Gonzalo and his brother were unable to speak English, he requested the owner of the car, Martinez, to translate for him. Officer Enockson testified he asked Gonzalo and his brother to accompany him outside; he did not demand their compliance. There was no evidence of any physical touching by the police officers. Gonzalo and his brother were not handcuffed until after they had gone outside and had been identified. We find there was no seizure until after the identification was made. Consequently, we conclude there was no violation of Gonzalo's constitutional rights and the motion to suppress was properly denied.

**II. *Sufficiency of the Evidence.*** Gonzalo contends there was insufficient evidence to support his conviction of first-degree kidnapping and second-degree sexual abuse. The scope of review is for correction of errors of law. Iowa R.App.P. 4.

A verdict will be upheld where there is substantial evidence to support the charge. *State v. LeGear,* 346 N.W.2d 21, 23 (Iowa 1984). Substantial evidence means such evidence as could convince a rational trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* The evidence is viewed in the light most favorable to the State, including legitimate inferences and presumptions which may fairly and reasonably be deduced from the record. *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984). We consider all the evidence at trial, not just the evidence that supports the verdict. *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980). The same standard for substantial evidence applies to both jury trials and trials to the court. *State v. Frake,* 450 N.W.2d 817, 818 (Iowa 1990).

**A. *Kidnapping.*** Gonzalo was charged with the sexual abuse alternative of kidnapping. The district court was required to find all of the following elements beyond a reasonable doubt in order to find Gonzalo guilty. Gonzalo must have:

1. Confined the victim;

2. Knowing that he lacked her consent to do so;

3. With the intent to subject the victim to sexual abuse, and;

4. As a consequence, the victim was subjected to sexual abuse.

*See* Iowa Code §§ 710.1, 710.2 (1993). Gonzalo argues the knowing element was not met and the confinement and removal were merely incidental to the underlying sexual abuse.

■ We first address Gonzalo's contention the language barrier between himself and Marie prevented him from knowing he lacked Marie's consent to remove and confine her. When the car stopped at the gas station, Gonzalo's brother Jose tried to kiss Marie and put his hands underneath her blouse. Marie wanted to get out of the car. She told the men she wanted out of the car to go to the bathroom. She was not allowed to go. Jose prevented Marie from leaving the car by putting her in a headlock. Marie testified she could not yell or scream as a result of the headlock. Marie began kicking her legs in an attempt to get free. Marie's legs were held down by the third man. At this point, the three men began yelling at each other in Spanish.

We do not believe it is possible Gonzalo did not know what was going on in the car. Clearly he was aware, as he was one of the three men yelling at each other in Spanish. Indeed, given Marie's hard-fought struggle in the car, Gonzalo did not need to speak English to understand Marie was being held against her will.

■ We next address Gonzalo's argument the confinement and removal was merely incidental. The confinement or removal necessary to sustain a conviction must be more than incidental to the commission of the underlying offense of sexual abuse. *State v. Newman,* 326 N.W.2d 788, 791 (Iowa 1982); *State v. Marr,* 316 N.W.2d 176, 178 (Iowa 1982); *State v. Knupp,* 310 N.W.2d 179, 183 (Iowa 1981); *State v. Rich,* 305 N.W.2d 739, 745 (Iowa 1981); *State v. Tryon,* 431 N.W.2d 11, 14 (Iowa App.1988). In order for the confinement or removal to have independent significance, one of the three following criteria must be met. The confinement or removal must:

1.  substantially increase the risk of harm to the victim;

2.  significantly lessen the risk of detection; or

3.  significantly facilitate escape following the completion of the offense.

*Rich,* 305 N.W.2d at 745. A broader interpretation of removal and confinement would produce unjust results since extremely disparate penalties may exist between the kidnapping charge and the underlying crime. *Id.*

We find there was clearly confinement and removal at the gas station. After Marie fought off Jose's sexual advances, she stated she wanted to leave the car and the men did not let her go. Marie struggled and the men restrained her. There could not be any doubt, at this point, Marie wanted out of the car, yet the men would not let her out. Instead, they drove away from the gas station to a remote area.

The confinement and removal substantially increased the risk of harm to Marie. Removal to the remote, isolated area provided a location where the defendants could freely deal with the victim as they wished. It also provided the freedom to assault Marie for an extended period of time. The confinement and removal also significantly decreased the risk of detection. The dark, remote area away from the general public allowed for the assault to take place without interruption. By removing Marie from the gas station to the remote area, the risk of a third party intruding upon the assault was significantly decreased. We find the criteria discussed in *Rich* is clearly met in this case. The confinement and removal was clearly more than incidental to the commission of the underlying crime of sexual assault.

We conclude there was substantial evidence to support the charge of kidnapping in the first degree.

**B. *Sexual Abuse.*** Gonzalo contends there was insufficient evidence to convict him of second-degree sexual abuse. In order to be found guilty, the following elements were required to be found by the factfinder beyond a reasonable doubt:

1.  On or about the 13th day of August, 1994, the defendant performed a sex act with Marie.

2.  The defendant performed the sex act by force or against the will of Marie.

3.  During the commission of sexual abuse, the defendant was aided or abetted by one or more persons.

*See* Iowa Code §§ 709.1, 709.3 (1993). Gonzalo contends the last two elements were not met.

■ Gonzalo first asserts there was insufficient evidence of aiding or abetting. As was previously discussed, it is clear all three men knew in the car Marie was struggling and resisting her confinement. Jose put Marie in a headlock and Gonzalo contends the other man held down her feet when she began kicking. During the drive to the remote area, all three men conversed amongst themselves in Spanish. During Jose's assault, one of the other two men stood over Jose for a short time. Between the assaults, the next man would appear before Marie had time to stand up and get dressed. The car was parked only ten or fifteen feet away from where the assaults took place. The three men argued in Spanish both before and after the assaults took place. We also find the fact the three men all took turns assaulting Marie as support for the finding of aiding and abetting. Clearly there was substantial evidence to support the aiding and abetting element.

■ Gonzalo next asserts there was insufficient evidence the sex act was performed against Marie's will. After Jose assaulted Marie, Marie attempted to get dressed and run. Gonzalo, however, appeared and prevented her from doing so. Gonzalo put his hand on her chest and pushed her to the ground. While Marie was struggling to pull up her pants and underwear, Gonzalo pulled them off. Gonzalo held Marie's head to the ground by her hair. During the sex act, Gonzalo started biting Marie on the cheeks by her ears. Gonzalo also bit Marie on the neck. After completion of the sex act, Gonzalo stole Marie's underwear. We conclude there was substantial evidence to support the element regarding a sex act against Marie's will.

We conclude there was substantial evidence to support the charge of sexual abuse in the second degree.

■ III. *Merger of the Convictions.*
Finally, Gonzalo contends the district court erred in failing to merge the two offenses. As a constitutional issue is involved, our re-

view is de novo. *Nichol v. State,* 309 N.W.2d 468, 470 (Iowa 1981).

■ Sexual abuse in the second degree is a lesser-included offense of kidnapping in the first degree. *State v. Mitchell,* 450 N.W.2d 828, 831 (Iowa 1990). In *State v. Holderness,* our supreme court found a defendant could be convicted and sentenced separately for first-degree kidnapping and second-degree sexual abuse when the facts supported the occurrence of two separate crimes in time and place. *State v. Holderness,* 301 N.W.2d 733, 740 (Iowa 1981). The district court stated the following:

> In this case, each of the defendants would be guilty of kidnapping in the first degree because each defendant removed and confined Marie to a remote area without her consent with the intent to subject Marie to sexual abuse, and as a result of the removal, Marie was, in fact, sexually abused by the other defendant [Jose] and the third male.

> In addition to the sexual abuse by others (which becomes an element of the kidnapping), each defendant himself separately committed sexual abuse upon Marie. Of course, each defendant's act of sexual abuse could also be said to form the basis for satisfying the elements of sexual abuse under the kidnapping charge. But where there are separate acts of sexual abuse by separate defendants and a third male, each defendant can be convicted of his own act of sexual abuse as a separate offense, in addition to kidnapping (which in this case can include the other defendant's or third male's sexual abuse as an element).

We agree with this analysis and conclude the district court did not err in failing to merge the two offenses of first-degree kidnapping and second-degree sexual abuse in this particular case.

**AFFIRMED.**

CADY, J., concurs.

SACKETT, P.J., specially concurs.

SACKETT, Presiding Judge (concurring specially).

I concur with the majority's decision, applying recent case law, there is substantial evidence to prove beyond a reasonable doubt

the defendant is guilty of first-degree kidnapping.

First-degree kidnapping is punished by life in prison. Kidnapping in some cases is easily defined where the person is abducted for the sole purpose of holding him or her for ransom or as a hostage. In these cases, kidnapping is the central crime.

Clearly, kidnapping was not the central crime here; sexual abuse in the second degree was. However, by elevating the crime to kidnapping, the punishment is elevated to life in prison without the possibility of parole, the most severe sentence a defendant can receive in Iowa.

The victim here was returned in a relatively short period of time. The victim could identify her assailants. If penalties preclude persons from committing crimes, and there are those who believe they do, what incentive does an abuser have in allowing the victim to return alive?

If the legislature wants sexual abuse to be punished by life in prison, then the crime should be so punished. I have difficulty with decisions finding kidnapping has been committed when the victim is returned in a very short period of time after the act of sexual abuse occurs.