# IN THE COURT OF APPEALS OF IOWA

No. 22-1079
Filed October 25, 2023

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**ZACHARIAH COULEYON SIDNEY,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Bremer County, Christopher C. Foy,

Judge.

Zachariah Sidney appeals his conviction for second-degree sexual abuse.

**AFFIRMED.**

Karmen R. Anderson, Des Moines, for appellant.

Brenna Bird, Attorney General, and Bridget A. Chambers, Assistant

Attorney General, for appellee.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**GREER, Presiding Judge.**

Zachariah Sidney challenges his conviction for second-degree sexual abuse against M.S., arguing that (1) there was insufficient evidence for the jury to find a threat or use of force during commission of the sex act, (2) the district court improperly admitted evidence of prior bad acts of sexual abuse, and (3) the district court improperly admitted hearsay evidence identifying Sidney as the perpetrator. Because we find there was sufficient evidence that the use of force was part of one continuous series of acts, the testimony about prior acts of sexual abuse was admissible under the special exception in Iowa Code section 701.11 (2019), and that error was not preserved on the hearsay issue, we affirm.

**I. Background Facts and Prior Proceedings.**

In December 2019, Sidney went to pick up his nineteen-year-old daughter, M.S.,[1] from college to bring her home to Ankeny for winter break. M.S. was a freshman at the time, and she had just finished her first semester. According to M.S.'s testimony, while in her dorm room, Sidney brought out wine. He then made M.S. perform oral sex on him and penetrated M.S. anally. When the anal sex hurt to the point that M.S. could not take it, she started to hit Sidney. In response, Sidney choked M.S. until she could no longer breathe, nearly passed out, and felt afraid for her life. M.S. thought that Sidney intended to kill her. After Sidney eventually released M.S., she told him that she wanted to use the bathroom and, after leaving the dorm room, ran to the Resident Assistant's (RA) office. The RA

---

[1] M.S. was born in 2000 and, prior to this case, both she and Sidney believed they had a biological daughter/father relationship. But, DNA testing conducted as part of the investigation for this case in November 2020 revealed that Sidney is not M.S.'s biological father. The DNA tests were admitted at trial.

then took M.S. to the security office in another building. In her haste, M.S. left her dorm room without shoes, socks, or a coat.

At the security office, M.S. was crying, speaking hysterically, hunched over, and shaking while clutching the hand of Courtney Tripp-Struck, the area coordinator and supervisor of the RAs, who was called to try to speak to M.S. M.S. told Tripp-Struck "it's my dad" and that he was angry, he choked her, and she was not safe and had to run. The campus security officers sought help from the Waverly Police who arrived while M.S. was speaking on the phone with Sidney's wife, Jackie.[2] M.S. told Jackie, "[H]e put his hands on me. He was touching me. I'm scared to go back there. Dad has weapons." At the direction of Jackie, M.S. declined to interact with law enforcement, but M.S. begged Jackie to come get her saying, "[Y]ou know how he gets when he is mad." Police Officer Josh Buhrows intervened and asked M.S. to put her phone on speaker so he could talk to the mother and M.S. together. After trying and failing to get more information, Jackie convinced M.S. to travel home with Sidney in his vehicle so they could talk at home, promising she would stay on the phone with M.S. the entire two-hour trip to Ankeny to help M.S. feel safe.

In February 2020, after feeling like she "couldn't take it anymore," M.S. told a friend at school what had been happening with Sidney and ultimately was encouraged to talk to the director of counseling services at the college, Stephanie Newsom. According to Newsom's testimony, M.S. told Newsom that Sidney had been emotionally and physically abusing her for years. When M.S. was thirteen,

---

[2] M.S. does not have a relationship with her biological mother, and Jackie served as M.S.'s de facto mother. M.S. referred to her as "Mom."

she moved into Sidney's home with Sidney, Jackie, and their two sons. While M.S. was in high school, Sidney would come into M.S.'s bedroom on an almost nightly basis and commit various forms of sex acts with M.S. Once M.S. left for college, Sidney would call her nightly and request that she send him sexual images and perform sex acts via video call.

Newsom directed M.S. to the Waverly police and, in February 2020, M.S. participated in an interview with a child protection center (CPC). At the interview, she told the CPC interviewer, Ashley Leistikow, the same information she told Newsom. M.S. also identified the brand and color of condoms that Sidney used and gave additional details about the sex acts including that M.S. suffered from repeated infections, cramping, and uterine pain; M.S. stated that Sidney forced anal rather than vaginal sex on M.S. in December 2019 because M.S. was bleeding vaginally at that time. M.S. told Leistikow that Sidney had threated her with a firearm in the past and had also hit, slapped, and choked her. Sidney also gave her marijuana and would often have her get high or drunk before perpetrating sex acts. To further control the situation, Sidney would isolate M.S. from her friends and prevent her from spending time with them.

Armed with the details from the CPC interview, Investigator Troy Schneider of the Waverly Police Department traveled to Sidney's home and interviewed him about the allegations; the interview was recorded and parts were played for the jury at trial. While at first denying that there was a sexual relationship between them, Sidney finally described the dorm incident by stating that he and M.S. had a fight because "she didn't want it anymore" and he had to press hard on her chest

to "keep her under control." During the interview many other admissions of sexual acts also were made by Sidney.

Sidney was charged with incest, in violation of Iowa Code section 726.2, and second-degree sexual abuse, in violation of Iowa Code sections 709.3(1) and 709.3(1)(a), a class "B" felony. After a review of the DNA testing, the State dropped the incest charge and proceeded to trial on only the sexual abuse charge.

Before trial, the district court addressed Sidney's motion in limine related to admission of testimony about Sidney's perpetration of sex acts on M.S. other than the December 2019 incident in her dorm room. The district court ruled that any sexual act committed after M.S. turned sixteen years old was admissible under Iowa Code section 701.11. M.S., Newsom, and Leistikow all testified at trial along with Tripp-Struck and three members of law enforcement.

Trial took place over three days in April 2022. On direct examination, M.S. testified about the sexual acts that took place while she lived with Sidney. She stated that she had a single dorm room at college specifically because of Sidney's request. M.S. also testified that on the night that Sidney picked her up in December 2019, M.S. did not want to engage in sexual acts but that she felt she could not say no. M.S. was scared of Sidney hurting her, and Sidney had choked M.S. and pushed her into objects or the bed in the past. Text messages between M.S. and Sidney, in which Sidney asked M.S. for "something special" and asked whether M.S. has had sex with anyone else, were part of the State's evidence. The State also introduced photographs taken while executing a search warrant on Sidney's home in March 2020; the photos depicted a loaded shotgun found underneath the mattress and a long gun behind the door in M.S.'s bedroom along with boxes of

condoms, Vaseline, a penis pump, boxers, and cock ring in M.S.'s bedroom. Captain Jason Leonard, an investigator with the Waverly Police Department, testified about collecting sheets from the bed in M.S.'s bedroom at Sidney and Jackie's house and how DNA analysis of those sheets confirmed the presence of Sidney's semen. Captain Leonard also seized a handgun from Sidney's car.

Sidney objected to admission of Newsom's testimony at trial as hearsay. The State argued that the testimony, including statements that Sidney was the perpetrator of the abuse against M.S., was admissible under an exception for statements made for medical diagnosis or treatment under Iowa Rule of Evidence 5.803(4). Newsom also testified that she offered counseling services primarily to diagnose and to treat mental-health disorders as well as to offer guidance in managing symptoms, and often made referrals to psychiatrists for clients to receive prescriptions for medications, if necessary. In M.S.'s case, Newsom stated that she focused on the isolation M.S. felt after reporting the sexual abuse by Sidney because of their familial relationship. Another member of law enforcement, Investigator Schneider, testified that Sidney and Jackie made M.S. return her house key and credit card and also disconnected service to her cell phone after M.S. went to the police in February 2020. In a voice recording of Investigator Schneider's interview with Sidney, which was admitted in part at trial, Sidney told Investigator Schneider that Sidney pushed M.S. against the wall and put pressure on her chest while in her dorm room in December 2019.

After the case was submitted to the jury, Sidney moved for a mistrial based on prosecutorial misconduct, and the district court denied that motion. The jury returned a verdict of guilty after one hour of deliberations, and, in May 2022, the

district court sentenced Sidney to an indeterminate term of incarceration not to exceed twenty-five years,[3] lifetime parole pursuant to Iowa Code chapter 903B, and registration with the sex offender registry. Sidney now appeals.

**II. Standard of Review.**

We review the sufficiency of the evidence supporting a conviction for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). We uphold the jury's verdict if substantial evidence supports it; "[s]ubstantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* Evidence that does no more than raise suspicion, speculation, or conjecture is insufficient. *State v. West Vangen*, 975 N.W.2d 344, 349 (Iowa 2022). "[W]e view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Crawford*, 972 N.W.2d at 202 (citation omitted).

We review evidentiary rulings for abuse of discretion. *State v. Buelow*, 951 N.W. 879, 884 (Iowa 2020). "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001) (citation omitted). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.* (citation omitted). In contrast, we review rulings on hearsay for correction of errors at law. *Id.* On appeal, we can affirm an evidentiary ruling on any basis

---

[3] This sentence runs consecutive to a sentence from a Polk County case, FECR337875.

supported by the record. *State v. Dessinger*, 958 N.W.2d 590, 599 (Iowa 2021) (citing *DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002)) ("We consider the applicability of exceptions in criminal cases even when not urged at trial as there is no point in reversing a conviction when the evidence will be admissible at retrial in any event.").

## III. Discussion.

### A. Insufficient Evidence.

To convict Sidney of second-degree sexual abuse, the State needed to prove that Sidney committed sexual abuse while using or threatening to use force creating a substantial risk of death or injury. *See* Iowa Code § 709.3(1). The jury received the following marshalling instruction describing the elements the State was required to prove:

> 1. On or about December 19, 2019, [Sidney] performed a sex act with [M.S.] in Bremer County, Iowa.
> 2. [Sidney] performed the sex act by force or against the will of [M.S.].
> 3. During the commission of the sex act, [Sidney] used or threatened to use force creating a substantial risk of death or serious injury to [M.S.].

Sidney challenges the sufficiency of the evidence supporting the jury's finding as to the second and third elements of the criminal act. As to the second element, Sidney argues M.S. never told him no when they engaged in sexual acts in her dorm room in December 2019, so he contends the evidence supports the consensual nature of their relationship, not that Sidney performed the sex act "by force or against [her] will." On the proof of the third element, Sidney maintains no force was ever used because any claimed choking came after—not during—the

oral and anal sex acts.  To show any force came after the sex acts, Sidney points to this testimony by M.S.:

> Q. Okay.  When you [began hitting him to get him away], what did he do?  A. He, like, he sat back at first and looked at me and he, like, came at me and, like, tried choking me.
> Q. Okay.  So he put his hands around your throat?  A. Yes.
> Q. And I take it he—he squeezed?  A. Yes.
> Q. Okay.  Cut off your ability to breathe?  A. Yes.
> Q. Were you afraid?  A. Yes.
> Q. And were you afraid for your life?  A. Yes.
> Q. Did you get to the point where you almost passed out?  A. Yes.

Thus, he asserts there is not substantial evidence he committed second-degree sexual abuse.  We disagree.

First, "[w]hen evaluating sufficiency-of-the-evidence challenges, we do not resolve conflicts in the evidence, pass upon the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence . . . ."  *State v. Howland*, No. 22-0519, 2023 WL 3613259, at *2 (Iowa Ct. App. May 24, 2023) (citing *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006)).  Without wavering, M.S. testified at trial that the sex acts in her dorm room were against her will.  *See State v. Donahue*, 957 N.W.2d 1, 11 (Iowa 2021) ("A sexual abuse victim's testimony alone may be sufficient evidence for conviction.").  The element of consent, a focal point of the crime of sexual abuse, turns on the intentions and mental state of the victim. *Id.*  And M.S.'s behavior as she fled the dorm room and hysterically attempted by phone to inform Jackie of what was occurring bolsters her testimony about her lack of consent.

And, as to the use of force, our supreme court noted in *Donahue*, "While verbal and physical resistance may demonstrate a lack of consent, they are not

required." *Id.* at 11; *see also State v. Meyers*, 799 N.W.2d 132, 146 (Iowa 2011) ("[W]e conclude psychological force or inability to consent based on the relationship and circumstance of the participants may give rise to a conviction under the 'against the will' element of section 709.4(1). This statutory element considers all circumstances that establish actual non-consent, including any psychological circumstances particular to the participants."); *State v. Bauer*, 324 N.W.2d 320, 322 (Iowa 1982) ("We believe, however, that the jury could—and obviously did—believe complainant when she testified to fear which rendered her incapable of protest or resistance. This is all our statute demands."). Although she conceded that she was "never held down and raped," M.S. described times when she refused Sidney's advances, that he threatened and demeaned her and hurt her by choking, slapping, or pushing her up against the wall or the bed. Considering the psychological circumstances involved in their sexual history, M.S. testified to a belief that Sidney would hurt her if she said no when he wanted to have sex with her in the dorm room. *See Meyers*, 799 N.W.2d at 140–41, 146–47. In *Meyers*, the step-daughter's vulnerability, history of physical abuse, estrangement from family, and need for support and shelter made her easy sexual prey for the controlling step-father. *Id.* at 146-47. Similar to *Meyers*, as a controlling father-figure, Sidney took advantage of M.S.'s vulnerability, used psychological abuse, alcohol, and drugs to manipulate her and used his physical power to remind her to comply. Likewise, M.S. knew Sidney had weapons, which heightened her fears. Further, on this point, the jury could have also considered Captain Leonard's testimony that Sidney possessed at least three firearms and Sidney's admission stating that he pushed M.S. against the wall and put pressure

on her chest after she reported to police "she had enough and [Sidney] wasn't aware." Thus, Sidney acknowledged the force he used against her.

Next, Sidney emphasizes that any alleged force in the dorm room incident came after the sexual act and so, even if believed, the assault was a separate offense. Thus, he argues that the State failed to prove the third element that required Sidney "to use or threaten to use force creating a substantial risk of death or serious injury to M.S. *during the commission of the sex act*." (Emphasis added.) But it is not necessary that the risk of death or serious injury occur simultaneously with the commission of sexual abuse. *See State v. Carter*, 602 N.W.2d 818, 821–22 (Iowa 1999) (holding something occurs "in the course of" or "in the commission of" when it "precedes or follows the sexual abuse as long as the injury and sexual abuse occur as part of an unbroken chain of events or as part of one continuous series of acts connected to one another"). That M.S. attempted to stop Sidney during the act of anal sex, resulting in their physical altercation where Sidney choked her, supports the nexus between the two. The threat or use of force can follow the sexual abuse. *Id.* Furthermore, we have repeatedly found that threats and use of force interspersed with acts of sexual abuse satisfy the requirements of section 709.3(1). *See, e.g.*, *State v. Ledezma*, 549 N.W.2d 307, 309 (Iowa Ct. App. 1996) (finding sufficient evidence of second-degree sexual abuse when assailants placed victim in a headlock; one assailant put his hand on her chest, pushed her to the ground, and held her by the hair; and each vaginally penetrated her); *State v. Taylor*, 538 N.W.2d 314, 315–16 (Iowa Ct. App. 1995) (finding sufficient evidence of second-degree sexual abuse when defendant repeatedly beat and forced victim to submit to vaginal intercourse).

Here, there was sufficient evidence for the jury to conclude that Sidney choked M.S., cutting off her ability to breathe, and making her worry that her life was in danger, following the commission of the sex act that M.S. was attempting to stop. So viewing the evidence in the light most favorable to the State, we find Sidney's challenge to the sufficiency of the evidence supporting his conviction fails. This record reflects substantial evidence to find Sidney guilty beyond a reasonable doubt of sex abuse in the second-degree. *See Donahue*, 957 N.W.2d at 7.

**B. Prior Bad Acts.**

Here, Sidney points to the many references of prior acts of sexual abuse at M.S.'s home that he felt permeated the trial, creating prejudice to him.[4] Sidney contends these unrelated allegations were brought up to show his propensity for sexual abuse. Propensity evidence is inadmissible. *See* Iowa R. Evid. 5.404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."). But, evidence of other crimes, wrongs, or acts by the defendant "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* The list of permissible purposes for admission of evidence of other crimes, wrongs, or acts is not exhaustive. *State v. Plaster*, 424 N.W.2d 226, 228 (Iowa 1988).

---

[4] The district court limited evidence of alleged acts of sexual abuse to those that occurred after M.S. turned sixteen. Sidney also makes a similar argument about evidence that discussed marijuana and weapons discovered by law enforcement, but this issue was not preserved for our review. *See State v. Schefert*, 910 N.W.2d 577, 583 (Iowa 2018) (confirming that a party cannot raise any error regarding admission of evidence for the first time on appeal).

The State argues the district court did not abuse its discretion by admitting the evidence of prior sexual abuse because the prior sexual act evidence was relevant to a legitimate, disputed factual issue. To get there, the district court had to engage in a three-part analysis. As the supreme court framed the test in *State v. Thoren*:

> The court must first "determine whether the evidence is relevant to a legitimate, disputed factual issue." Second, the evidence must provide "clear proof" that the defendant engaged in the act. Mere speculation or hearsay is not enough, but "[t]estimony of credible witnesses can satisfy the clear-proof requirement." Finally, the court must consider whether the evidence's "probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

970 N.W.2d 611, 626 (Iowa 2022) (citations omitted). But first, we note that "Iowa recognizes a special exception in sex abuse cases which permits use of prior acts 'to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial.'" *State v. Schaffer*, 524 N.W.2d 453, 456 (Iowa Ct. App. 1994) (quoting *State v. Spaulding*, 313 N.W.2d 878, 880–81 (Iowa 1981) (collecting cases recognizing the special exception). The special exception is now codified at Iowa Code section 701.11 and allows the prosecution to introduce the relevant history with the same victim: "In a criminal prosecution in which a defendant has been charged with sexual abuse, evidence of the defendant's commission of another sexual abuse is admissible and may be considered for its bearing on any matter for which the evidence is relevant." *See State v. Cox*, 781 N.W.2d 757, 769 (Iowa 2010) (finding section 701.11 unconstitutional when used against a different victim to prove general propensity of the defendant but concluding it is constitutional to introduce the relevant history with the same victim).

Returning to the three-part analysis, we start with the question whether the evidence was relevant to a legitimate, disputed factual issue in this trial. The State argued at trial that it was necessary to show the pattern of physical and emotional abuse and that it "informed the way this [December 2019] incident got reported." Here, the evidence was used to demonstrate the nature of Sidney's relationship with M.S. and not his propensity to commit sexual abuse in general. And where the evidence goes toward defining the nature of the relationship, evidence of sexual abuse with the same victim is admissible. *See State v. Reyes*, 744 N.W.2d 95, 102 (Iowa 2008) (allowing evidence of sexual abuse with the same victim to show "the nature of the relationship between the alleged perpetrator and the victim"). Furthermore, the past actions involved with the sexual acts went toward Sidney's intent, preparations, and plan. *See Cox*, 781 N.W.2d at 761.

Likewise, it met the second and third requirements under the analysis: there was clear proof of the prior sex acts and the probative value of the evidence outweighed any danger of unfair prejudice. *See State v. Putman*, 848 N.W.2d 1, 9 (Iowa 2014). M.S.'s testimony satisfied the clear proof requirement. *See Reyes*, 744 N.W.2d at 101 ("[D]irect testimony from the victim of a prior alleged assault, as a matter of law, is sufficient 'clear proof' to meet the code requirement.").

Finally, the probative value of testimony was not substantially outweighed by the danger of unfair prejudice. The sexual abuse described by M.S. was highly probative of the threat or use of force against her as well as that the oral and anal sex act performed in December 2019 was against her will. While the prior acts of sexual abuse were, by nature, difficult evidence to hear, that alone does not define our issue. The evidence was helpful to provide context and support for the claim

that M.S. believed she could not say no to Sidney. For these reasons, the district court did not abuse its discretion in admitting the testimony and Sidney's challenge on this point fails.

**C. Hearsay.**

We start with the State's assertion that Sidney did not preserve error on the issue involving the admissibility of Newsom's testimony about her counseling of M.S. To this point, the State argues that Sidney has not preserved this claim because, after the discussion with the district court about Sidney's hearsay objection outside the presence of the jury, he failed to repeat the objection once Newsom resumed testifying. Typically, "[r]epeated objections need not be made to the same class of evidence." *State v. Kidd*, 239 N.W.2d 860, 863 (Iowa 1976); *see also State v. Padgett*, 300 N.W.2d 145, 146 (Iowa 1981) ("[A]dditional objections on the same ground to testimony of the same kind would be to no avail."). But here, the district court required the State to "lay more foundation" for Newsom's testimony and then stated: "You're certainly free to renew any objections. I anticipate my ruling on those objections will be the same. But at this stage, I'm—until I know for sure foundation has been laid, I'm not saying categorically that Ms. Newsom can talk about whatever."

After bringing the jury back in to the courtroom, the district court sustained the previous hearsay objection and told the prosecutor to proceed with a different question. Tackling the foundational concerns, the State established Newsom's qualifications as director of counseling services at the college for twenty-three years and as a therapist in private practice addressing a number of issues, including treating symptoms resulting from sexual abuse. Newsom proceeded to

describe her treatment with M.S., including the details about the December 2019 incident with Sidney. To this testimony, Sidney made no objection. Here, given the directive by the district court, we find Sidney had to renew his hearsay objection to Newsom's specific testimony to preserve error. "The general rule is that where an objection is sustained, it must be repeated each time similar testimony is offered by the opposing party." *Dessinger*, 958 N.W.2d at 599.

This is not the case where repeated objections to hearsay would have been made to no avail, as after the foundation was developed, Sidney did not test what the district court meant when it said "I'm not saying categorically that Ms. Newsom can talk about whatever." To which Sidney's counsel said: "I'll make a separate record to protect my client's interests." But here, no record was forthcoming. Thus, error was not preserved on the hearsay issue, so we decline to consider it.

**IV. Conclusion.**

Finding there was sufficient evidence that the use of force was part of one continuous series of acts by Sidney, the testimony about prior acts of sexual abuse by Sidney against M.S. was admissible under the special exception in Iowa Code section 701.11, and Sidney did not preserve error on the hearsay issue, we affirm the conviction.

**AFFIRMED.**