# IN THE COURT OF APPEALS OF IOWA

No. 24-0343
Filed October 29, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAMES KERKULA HORACE JR.,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Melissa Anderson-Seeber, Judge.

James Horace Jr. appeals his conviction for second-degree sexual abuse, challenging the sufficiency of the evidence. **AFFIRMED.**

Austin Jungblut of Parrish Kruidenier, L.L.P., Des Moines, for appellant.

Brenna Bird, Attorney General, and Aaron Rogers, Assistant Attorney General, for appellee.

Considered without oral argument by Ahlers, P.J., Buller, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**POTTERFIELD, Senior Judge.**

James Horace Jr. appeals his conviction for second-degree sexual abuse. He challenges the sufficiency of the evidence, arguing that the State failed to show venue and that the testimony of the victim was too conflicted to prove the alleged abuse. We disagree. Horace waived any challenge to venue by declining to raise it in a pretrial motion. As for the elements of Horace's offense, we find substantial evidence supports the district court's verdict. We therefore affirm Horace's conviction.

## I.     Background

At the center of this case is a child—we will call her Sara[1]—who was born in 2015. When Sara was two years old, she began making regular visits to Horace's home in Waterloo, Iowa. Horace's wife looked after Sara while her mother worked second shift at a processing plant. That was the routine for six evenings a week until approximately October 2022, when Sara started to resist going to Horace's house. Sara's mother found her behavior unusual, as Sara had always enjoyed playing with Horace's children. Eventually, Sara disclosed to her mother that Horace had "put his hand down [her] pants" and touched her genitals.

Sara's mother confronted Horace, and a criminal investigation ensued. During a recorded interview in January 2023, Sara told a child protective worker that something "wrong" had happened while she was at Horace's house. When asked what she meant, Sara explained that somebody had used their hand to touch her genitals under her clothes. Horace was also interviewed by police. He

---

[1] To protect the child's identity, we adopt the randomly generated pseudonym used by the State in its appellate brief.

initially alleged that he was unable to recall some of his interactions with Sara because he often drank alcohol in the evenings. But he eventually told a detective that he may have put his hand down Sara's pants. As Horace put it, "if she says so, it did happen."

The State charged Horace with one count of sexual abuse in the second degree. At a bench trial in October 2023, Sara—then seven years old—initially denied any recollection of Horace or his house. With further questioning, she divulged that she recognized Horace from "before when I had a babysitter," and that Horace "would always follow me and put his hands in my pants." Sara testified that Horace touched her "front" or "coochie," although she equivocated when asked whether he touched her inside or outside her underwear. She also gave conflicting answers as to the frequency of the abuse. At one point, Sara testified that Horace touched her "every time" she went to his house. Later, she said it was "about eleven times."

Horace took the stand at trial, denying any sexual contact with Sara and renouncing the earlier statements he made to police. In a carefully reasoned ruling, the district court rejected Horace's version of the facts and found him guilty as charged. Horace now appeals, challenging the sufficiency of the evidence. He argues the record fails to support the district court's finding that the abuse took place—if at all—in Black Hawk County. He also challenges the court's decision to credit Sara's version of events, contending her testimony was too conflicted to prove the alleged abuse.

## II.  Standard of Review

We review challenges to the sufficiency of the evidence for correction of errors at law.  *State v. Mathis*, 971 N.W.2d 514, 516 (Iowa 2022).  We must affirm the conviction if it is supported by substantial evidence, which is evidence "sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt."  *Id.* at 516–17 (citation omitted).  The substantial evidence standards we use when reviewing jury verdicts apply equally in cases tried to the court.  *State v. Ledezma*, 549 N.W.2d 307, 310 (Iowa Ct. App. 1996).

## III.  Discussion

### a.  Location of the Offense

Horace asserts that the State failed to prove any of the alleged sexual abuse occurred in Black Hawk County, which is the venue where he was tried.  Horace concedes the record shows that he moved to Waterloo in 2017 and that any abuse would have occurred inside his home, but he contends "it was never established the residence was located in Black Hawk County."  The State argues that Horace waived any venue challenge by failing to raise it in a pretrial motion.

Generally speaking, a criminal action must "be tried in the county in which the crime is committed."  Iowa Code § 803.2(1) (2022).  This requirement stems from the common law notion that "the situs of the alleged crime is usually the home of the defendant" and the place where "witnesses are accessible for the purpose of trial."  *State v. Dorsey*, 16 N.W.3d 32, 42 (Iowa 2025) (citation omitted).  Of course, those interests sometimes must yield to due process rights.  *See id.*  Our procedural rules permit either party to seek a change of venue when necessary to ensure a fair trial.  *See* Iowa R. Crim. P. 2.11(4)(f), (11).  However, a venue

objection must be raised prior to trial; otherwise, it is waived. Iowa Code § 803.2(3). Horace never moved for a change of venue. We therefore agree with the State that any objection to the place of his trial is waived on appeal. *Id.*

"Venue is not an essential element" of a charged offense. *State v. Allen*, 293 N.W.2d 16, 20 (Iowa 1980). But even if it were, there is substantial evidence supporting the district court's finding that the crime occurred in Black Hawk County. Horace testified that he relocated to Iowa in 2016 and later moved to a home on Western Avenue in Waterloo. He conceded that Sara visited his house, which is where Sara testified that Horace abused her. Nothing in the record suggests that Horace ever encountered Sara outside of his Waterloo home. The district court— as finder of fact—was entitled to rely on its common geographical knowledge when deciding whether venue was correct. *See State v. Stevens*, 719 N.W.2d 547, 552 (Iowa 2006) (explaining jurors may "rely on their common knowledge to support a conviction").

Horace waived any objection to venue, and he does not appear to dispute that the charged conduct took place in Waterloo. We therefore reject Horace's first claim of error.

### b. Whether a Sex Act Occurred

Horace also challenges the sufficiency of the evidence on one of the substantive elements of his offense. In order to convict Horace for second-degree sexual abuse, the State was required to prove that he committed a "sex act" against Sara. *State v. Constable*, 505 N.W.2d 473, 475 (Iowa 1993); *see also* Iowa Code § 709.1. To this end, Sara testified that Horace reached under her

clothing[2] and touched her genitals on more than one occasion. Horace does not dispute that these contacts would satisfy the sex-act element of his offense. *See* Iowa Code § 702.17(3) (Supp. 2022) (defining a "sex act" to include "[c]ontact between the finger, hand, or other body part of one person and the genitalia . . . of another person"). However, he argues the trial record was too conflicted to prove he ever touched Sara inappropriately.

Horace relies primarily on *State v. Smith*, where a panel of our court reversed a jury's finding of sexual abuse because the pivotal testimony of two child-victims was "self-contradictory" and "devoid of . . . experiential detail." 508 N.W.2d 101, 104 (Iowa Ct. App. 1993). However, *Smith* has long been criticized as an "outlier case" that misapplied the deferential standard required for review of a jury verdict. *State v. Trane*, 984 N.W.2d 429, 436 (Iowa 2023) (quoting *Mathis*, 971 N.W.2d at 518). Although frequently invoked, it has never been applied to reverse a conviction on a challenge to the sufficiency of the evidence. *See Mathis*, 971 N.W.2d at 518 (noting *Smith* has "not been followed in any sexual abuse case in Iowa since"); *State v. Showers*, No. 23-0390, 2024 WL 2317709, at *4–5 & n.4 (Iowa Ct. App. May 22, 2024) (collecting cases declining to apply *Smith*). Indeed, after the parties submitted their appellate briefs in this case, our court filed an en banc decision overruling *Smith* and disavowing its reasoning. *State v. Lang*,

---

[2] Horace's appellate brief highlights Sara's inconsistent testimony as to whether he touched Sara inside or outside her underwear. But our supreme court has made clear that "skin-to-skin contact is not required in order to establish a 'sex act' under section 702.17." *State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994). "[P]rohibited contact may occur even though the specified body parts or substitutes are covered." *Id.* Because a layer of cloth cannot insulate Horace from criminal liability, it was unnecessary for the district court to wrestle with this aspect of the record. Nor do we address the issue further.

No. 24-0406, 2025 WL _____, at *_ (Iowa Ct. App. Oct. 29, 2025) (explaining that, among other flaws, "*Smith* cannot be reconciled with the[] fundamental principles of appellate review").

To avoid repeating the errors of *Smith*, we must approach Horace's sufficiency challenge with proper deference toward the verdict. The question before us is not whether the district court reached the only conclusion that might be drawn from a conflicted record, but whether the evidence "supports the finding actually made." *State v. Lacey*, 968 N.W.2d 792, 800–01 (Iowa 2021). We view the evidence in the light most favorable to the State, granting all legitimate inferences that might reasonably be drawn from the record facts. *Mathis*, 971 N.W.2d at 516. In doing so, we may not weigh the evidence, pass on the credibility of witnesses, or resolve conflicts in the testimony—those decisions are for the finder of fact.[3] *Id.* at 519.

Under these standards, we find substantial evidence supports the verdict in this case. We need not look farther than Sara's testimony. *See State v. Donahue*, 957 N.W.2d 1, 10–11 (Iowa 2021) ("A sexual abuse victim's testimony alone may be sufficient evidence for conviction."); *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) (finding a victim's testimony was "by itself sufficient to constitute

---

[3] One reason we do not second-guess credibility findings is that we lack the first-person perspective of a factfinder at trial. Here, for example, the district court adeptly observed how Sara's body language lent credence to her testimony:

> In response to a question by the prosecutor of whether she knew where the private areas on body we[re], [Sara] said, "do I have to say them?" After the prosecutor told her yes, the Court saw [Sara] draw in a deep breath, slowly let it out, and begin answering questions more fluidly. Her body language was consistent with someone who did not want to have to recount events but physically and mentally gathered the strength to do it anyway.

substantial evidence" of sexual abuse). Although she was unable to elaborate the precise manner and frequency of Horace's assaults, "[w]e do not require victims of child sex abuse to recall every detail with perfect clarity." *State v. Hagenow*, No. 22-1958, 2024 WL 2042137, at *6 (Iowa Ct. App. May 8, 2024). Nor do occasional inconsistencies defeat a child's testimony. *See Donahue*, 957 N.W.2d at 11 ("Inconsistencies and lack of detail are common in sexual abuse cases and do not compel a jury to conclude that the victim is not credible . . . ."). The district court found that Sara's "basic story has not waivered." It was entitled to rely on her account.

Although our analysis could start and end with Sara's testimony, *see id.* at 10–11, we note that other witnesses corroborated her story. For instance, her mother testified regarding Sara's sudden change in attitude toward visiting the babysitter. She explained Sara's resistance was so severe that she sometimes "had to skip work because [Sara] did not want to go." These facts support a reasonable inference that Sara wanted to avoid something—or someone—at Horace's home. *See Hildreth*, 582 N.W.2d at 170 (noting a child's testimony of abuse was "corroborated by the evidence of the child's aversion to returning to the [defendant's] home"). In addition, testimony from Horace's wife confirmed that Horace would often be home while she was babysitting Sara, and that she would sometimes leave the child alone while tending to other tasks. On at least one occasion, she witnessed Sara sitting on Horace's lap.

Furthermore, the district court was permitted to hold Horace's prior statements against him. *See State v. Meyers*, 799 N.W.2d 132, 139 (Iowa 2011) (explaining informal admissions can be substantial evidence of sexual abuse when

supported by corroborating evidence). When Sara's mother first confronted Horace with her daughter's allegations, Horace apologized. He later told investigators that it was possible something happened with Sara, and that he was unable to recall some of his interactions with her due to his drinking. When confronted with more details, Horace said he would "go with" the accusations. Eventually, he admitted to putting his hand down Sara's pants, stating that "if she says so, it did happen." Horace attempted to backpedal these incriminating remarks at trial, but the district court found his shifting account unworthy of belief. *See Liggins*, 524 N.W.2d at 188 (noting a factfinder may consider a defendant's inconsistent statements as probative of guilt).

When we view the record in the light most favorable to the State—and honor the credibility findings made by the district court—we believe a rational factfinder could conclude beyond a reasonable doubt that Horace touched Sara's genitals beneath her clothing during at least one of her visits to his home. Horace does not dispute that such contact is a sex act upon a child. We therefore find substantial evidence supports his conviction for second-degree sexual abuse.

**AFFIRMED.**